**PHILLIPS PIPE LINE COMPANY, Appellant,**

v.

**O. B. McKOWN, J., et al., Appellees.**

**No. 1165.**

Court of Civil Appeals of Texas, Tyler.

April 12, 1979.
Rehearing Denied May 3, 1979.

Kent M. Rider, Stayton, Maloney, Hearne & Babb, Austin, for appellant.

H. Lee Godfrey, Graves, Dougherty, Hearon, Moody & Garwood, Austin, for appellees.

MOORE, Justice.

The opinion delivered on January 11, 1979, is withdrawn and the following opinion substituted in lieu thereof.

Plaintiffs, O. B. McKown, Jr., and 1826 Associates, Ltd.,[1] brought suit against Phillips Pipe Line Company, Inc. (Phillips), and Panhandle Construction Company, Inc.

---

1. A partnership owned by McKown.

(Panhandle), for damages arising out of the construction of a pipeline across plaintiffs' land on which Phillips owned a right-of-way easement. As grounds for a cause of action plaintiffs alleged: (1) that Phillips and its contractor, Panhandle, were guilty of negligence in the manner in which the land was used which resulted in damages to the land; (2) that they had trespassed on more land than was reasonably necessary for the construction of the line; (3) that Phillips breached its contract to restore the land to its original condition after the pipeline had been laid; and (4) that Phillips breached its agreement not to encroach, in any degree, on that portion of the lands which had been designated as a cemetery area. Plaintiffs further alleged that Phillips was responsible for the acts and omissions of its contractor, Panhandle, and prayed for a judgment against both defendants jointly and severally.

Phillips answered with a general denial and affirmatively alleged that it owned a right-of-way easement across plaintiffs' property, and therefore had a right to use the land for the purpose of constructing the pipeline. Phillips further denied that it contracted to pay plaintiffs for damages to the land and specially denied that either it or its agents, servants or employees were guilty of negligence in the construction of the pipeline across plaintiffs' land.

On the day of the trial plaintiffs settled with Panhandle for the sum of $22,500.00 and dismissed its cause against Panhandle with prejudice. Phillips then filed a petition alleging Panhandle was an independent contractor and therefore Phillips was not liable for the acts and conduct of its independent contractor in constructing the line. Phillips further alleged that Panhandle was Phillips' indemnitor and that the conduct of the plaintiffs in releasing and dismissing Panhandle from the suit, also had the effect of releasing Phillips from any and all liability for plaintiffs' claim for damages. After a trial before a jury, the trial court entered judgment on the verdict, awarding plaintiffs damages in the amount of $33,293.39,[2] from which Phillips perfected this appeal.

We affirm in part and reverse and render in part.

The evidence shows that the plaintiffs were the owners of two adjoining tracts of land in Travis County lying to the southwest of the city of Austin. Mr. McKown individually owned 82.01 acres and 1826 Associates, Ltd., owned an adjoining tract consisting of approximately 280 acres.

By instruments dated December 5, 1928, and February 25, 1929, plaintiffs' predecessor in title conveyed to Shell Pipe Line Corporation an easement across the property in question. Effective April 30, 1953, Phillips acquired all rights to this easement and to a 10-inch diameter pipeline located thereunder. Shell Pipe Line Corporation also maintained another pipeline under the easement so that at the time of this suit plaintiffs' property was burdened with two pipelines a short distance apart. The easement did not restrict the width of the pipeline right-of-way nor did it restrict the width in which the easement owner was permitted to work in the course of repairing, replacing or relocating any of the pipelines thereunder. Under the terms of the easement the grantee agreed to pay only for such damages as might arise to "crops, timber, fences, and buildings" caused by the construction of pipelines across the land.

In 1973, Phillips commenced replacing a 47-mile long stretch of pipeline through Hayes, Travis, and Bastrop counties. The work on the pipeline located on plaintiffs' land was performed between April and August of 1973. Prior to the time of the commencement of the pipeline, Phillips entered into a written contract with Panhandle to do the construction work. Under the terms of the contract, Panhandle was to do all of the construction work for a fixed price and no part of the work was to be performed by Phillips. It was agreed between Phillips and Panhandle that the max-

---

**2.** Although the verdict was for twice this amount, the amount was reduced by one-half, apparently on the theory that Phillips was enti-tled to contribution pursuant to the release agreement between plaintiffs and Panhandle.

imum width of the right-of-way in which Panhandle would construct the line would be 50 feet. Panhandle further agreed to indemnify and hold Phillips harmless from any and all damages resulting from the construction of the pipeline. The evidence shows that Panhandle performed all of the construction work. There are no findings that Phillips was guilty of any independent negligence apart from Panhandle or of any concurrent acts which contributed to the damages complained of by plaintiffs.

The cause was submitted to the jury on twenty-eight special issues, each of which assumed that Phillips was the principal actor and was primarily liable to the plaintiffs. The judgment recites that the total amount of damages awarded to plaintiffs was based exclusively on the jury's findings to Special Issues 14, 16, 23, 27 and 28. Although the jury made other findings that Phillips breached its contract to pay plaintiffs for damages to the land and awarded damages therefor, the court refused to enter judgment on those findings (Special Issues 5 and 26).

Since the trial court did not render judgment based on Phillips' alleged breach of its contractual agreement to pay damages for injury to the land, and since plaintiffs failed to complain of this on appeal, the questions to be determined are whether, when the plaintiffs released Panhandle, Phillips may be held liable to plaintiffs for (1) the acts and conduct of Panhandle, its independent contractor and indemnitor, for injury to the land; and (2) the acts and conduct of Panhandle in trespassing on plaintiff O. B. McKown's cemetery area, causing him physical pain and mental anguish.

■ Phillips contends under its first point of error that by the conduct of the plaintiffs in releasing and promising to protect Panhandle, its independent contractor and indemnitor, plaintiffs are precluded from recovering any further damages to the land from Phillips because the release of Panhandle also had the effect of releasing Phillips. Therefore, Phillips takes the position that the court erred in awarding plaintiffs a judgment for permanent damages to the land and damages for restoration of the land as found by the jury in response to Special Issues 14, 27 and 28. As we view the record, this contention must be sustained.

Instead of constructing the line itself, Phillips employed Panhandle to do the work. The line was to be constructed according to detailed plans and specifications as set forth in a lengthy written contract. Panhandle was to do all the work at a fixed price and repair and restore the land after the completion of the work. Under the terms of the contract, Phillips had no concern for the undertaking except the finished product. Although Phillips had a right to have its inspectors on the job see that the contract was complied with, the contract recited that Panhandle was an independent contractor. There is nothing in the record showing that Phillips exercised any control over the work or had a right to exercise any control over the details of the work. Under the holding in *Lone Star Gas Co. v. Kelly*, 46 S.W.2d 656 (Tex.Comm'n App.1932), we are convinced that the record conclusively establishes that Panhandle was an independent contractor as a matter of law.

The general rule relative to the liability of an employer for acts of an independent contractor is stated as follows in 30 Tex. Jur.2d, p. 500 sec. 17: "An employer is not responsible for the acts or omissions of an independent contractor and his subcontractors or servants, committed in the prosecution of the work that is not unlawful or attended with damages to others." It is also said that "The doctrine of respondeat superior has no application." Plaintiffs do not contend that the work contracted for was unlawful or inherently dangerous, and it has been repeatedly held that the laying of a pipeline is not inherently dangerous. *Lone Star Gas v. Kelly*, supra; *Weeks v. Texas Illinois Natural Gas Pipe Line Co.*, 276 S.W.2d 321 (Tex.Civ.App.—Galveston 1955, no writ history); *Intratex Gas Company v. Burkholder*, 506 S.W.2d 342 (Tex. Civ.App.—El Paso 1974, no writ history).

Phillips, having performed none of the work on the land and having retained no right to control the details of the work, cannot be liable to plaintiffs for injury to the land caused by its independent contractor, Panhandle.

█ Further, there are other reasons why Phillips may not be held liable to plaintiffs for injury to the land caused by Panhandle. It is undisputed that Panhandle agreed to indemnify and save Phillips harmless from any and all claims made by third parties for injury or damages resulting from the construction of the pipeline.[3]

Plaintiffs settled their suit against Panhandle by written agreement which was styled "Release of all Claims and Waiver." Under the terms of the settlement agreement, plaintiffs recited that it was their intention to release Panhandle from any and all claims, demands, liability, suits and causes of action by whomsoever caused, solely, jointly or otherwise for property damages, permanent and temporary damages to trees, vegetation and soil, damage due to loss of crops, diminution in market value of land, mental anguish and physical pain and suffering and all other losses resulting from or in any way attributable to the construction of the pipeline in question. Significantly, the release also recited that plaintiffs agreed to "protect" Panhandle from any claims which Phillips might have against Panhandle and to take nothing as to those damages which Phillips would be entitled to indemnity as shown by the following stipulation:

"It is the express intention of the parties hereto to release any and all claims which O. B. McKown, Jr., Betty McKown,

or 1826 Associates, Ltd., have against Panhandle Construction Company and Panhandle Construction Company, Inc., . . . as well as to protect such parties from any and all claims which Phillips Pipe Line Company might have against Panhandle Construction Company, and Panhandle Construction Company, Inc., . . . as the result of claims made against Phillips Pipe Line Company by O. B. McKown, Jr., Betty McKown, or 1826 Associates, Ltd., in Cause No. 236,-032, in the 53rd Judicial District Court of Travis County, Texas (or any other causes in which claims are asserted as the result of claims made by O. B. McKown, Jr., Betty McKown, or 1826 Associates, Ltd., arising from the aforesaid pipe line construction).

\* \* \* \* \* \*

"It is expressly acknowledged that O. B. McKown, Jr., Betty McKown, and 1826 Associates, Ltd., believe that Phillips Pipe Line Company is not entitled to indemnity or contribution from Panhandle Construction Company as to any amounts that the said McKowns and 1826 Associates, Ltd., might recover from said Phillips Pipe Line Company, it is further expressly recognized that, by virtue of principles of contribution and indemnity, Phillips Pipe Line Company, may, in some instances, be entitled to indemnity from Panhandle Construction Company in which case, based upon the determination of the trial court (or the last of any successive courts to make such a determination), *O. B. McKown, Jr., Betty McKown, and 1826 Associates, Ltd., will take nothing as to those items of dam-*

---

**3.** "12. Insurance and Indemnity:

" \* \* \*

"Contractor [Panhandle Construction Company] shall indemnify and hold [Phillips Pipe Line] Company harmless from any and all claims, liabilities, and causes of action of, to, or by third persons, including Contractor, his subcontractors, or the employees of either, for injury to or death of any person and for damage to or destruction of any property resulting directly or indirectly from any and all acts or omissions of contractor, his subcontractors, or of anyone directly or indirectly employed by

either of them in connection with the performance of any work provided for herein and regardless of whether such injury, death, damage and/or destruction is contributed to by the negligence of Company, its agents, servants and/or employees, and on behalf of Company and in Company's name will handle or defend at his own expense any claim or litigation in connection therewith. The indemnity provided for in this paragraph shall have no application to any claim, liability or cause of action resulting from the sole negligence of Company, its agents, servants, and/or employees."

*ages regarding which Phillips Pipe Line Company would be entitled to indemnity from Panhandle Construction Company.*" (Emphasis supplied.)

Although plaintiffs stipulated in their release of Panhandle that they were reserving their right to sue Phillips, we are of the opinion that the reservation was rendered ineffective when plaintiffs also undertook to protect and save Panhandle harmless from any and all claims which Phillips might have against Panhandle. As a result, any cause of action which plaintiffs might have had against Phillips was extinguished. Nevertheless, plaintiffs pursued their suit against Phillips and recovered a judgment. Upon the entry of the judgment, Phillips' liability became fixed and certain even though at that time Phillips had suffered no actual loss because Panhandle agreed to indemnify Phillips from any and all liability. *Texas Auto Services, Inc. v. Kemp*, 478 S.W.2d 646, 648 (Tex.Civ.App.—Austin 1972, no writ, citing *Pope v. Hays*, 19 Tex. 375 (1857). Phillips then had a right of indemnity from Panhandle and Panhandle had a right of indemnity over against the plaintiffs. Thus, if plaintiffs' release of Panhandle did not also have the effect of releasing Phillips, a useless circuity of action would result. In order to prevent a circuitous action such as this, the courts will disregard the reservation not to sue the third party and will hold that the third party was also released. *Panhandle Gravel Co. v. Wilson*, 248 S.W.2d 779, 784 (Tex.Civ. App.—Amarillo 1952, writ ref'd n. r. e.); *Simpson v. Townsley*, (Ca. 10 Kan.) 283 F.2d 743, 92 A.L.R. 526, 553. This result is reached because it is obvious that it could not have been the intention of the parties to the settlement agreement that Panhandle, in order to recover the loss from a judgment based on its indemnity provision if sued by Phillips on the contract, would then be entitled to turn around and sue McKown in a circuitous action.

Further, if the release executed by the plaintiffs is construed to mean that plaintiffs reserved a right to sue and recover judgment against Phillips, then there would be nothing to prevent Phillips from recovering the amount of the judgment over against Panhandle in accordance with the indemnity contract. Thus, Panhandle's release would become meaningless since the release would not be effective as a complete discharge of liability as contemplated by the parties to the settlement agreement. *Spradley v. McCrackin*, 505 S.W.2d 955 (Tex.Civ.App.—Tyler 1974, writ ref'd n. r. e.); *Smith v. South & W. R. Co.*, 151 N.C. 479, 66 S.E. 435 (1909). Obviously, the parties had no such intention.

Accordingly, we conclude that the release executed by the plaintiffs embracing an agreement to protect and hold Panhandle harmless constituted a complete exoneration of Phillips and removed any foundation on which plaintiffs could base a claim against Phillips for injury to the land. It follows that the portion of the judgment awarding plaintiffs a recovery based on Special Issues 14, 27 and 28 cannot stand.

Plaintiffs seek to avoid the effect of the settlement agreement by arguing that the damages awarded them based on Special Issue 14 can be sustained on the theory (1) that Phillips breached its contract to pay damages to the land; and (2) that there was no indemnity agreement between Phillips and Panhandle for damages to the land within the right-of-way.

We cannot agree with the contention that the award of $27,625.00 for negligent injury to the land, as found by the jury in Special Issue No. 14, may be sustained on the basis of other findings made by the jury that Phillips breached its agreement to pay damages for injury to the land. While the jury did find that such an agreement was made and awarded damages therefor, the trial court disregarded all of those findings and refused to enter judgment for damages thereon. Plaintiffs registered no complaint of the action of the trial court in this regard. Thus, those findings are no longer viable. For this reason, among others, those findings cannot now be utilized to support findings that plaintiffs were entitled to damages for negligent use of the land as found in response to Special Issue 14.

Nor can we agree with plaintiffs' contention that the judgment awarding them damages for negligent use of the land as found by the jury in Special Issue 14 may be sustained on the basis that the indemnity agreement between Phillips and Panhandle was not applicable to the land lying within the right-of-way. Plaintiffs take the position that under Paragraph XXII, section A.1,[4] the construction contract between Phillips and Panhandle must be construed to mean that the indemnity provisions of the contract did not obligate Panhandle to indemnify Phillips for any damages resulting to the land in the right-of-way established by the jury in the finding to Special Issue No. 10. Hence, they argue that since Panhandle had no obligation to indemnify Phillips for damages to the land in the right-of-way, Phillips was primarily liable for injury to that portion of the land. Therefore, they take the position that their settlement agreement does not constitute a bar to their right to recover damages to the land within the right-of-way. Based on this premise, they contend that the judgment for damages to land may be at least partially sustained based on the jury's finding to Special Issue No. 11 in which the jury found that the damage to the land within the right-of-way amounted to $18,562.50. We do not agree.

The section of the construction contract (Paragraph XXII, Section A.1) on which plaintiffs rely does not alter the indemnity agreement between Phillips and Panhandle. It merely means that as between Phillips and Panhandle, Phillips was authorized to compromise and settle all claims for damages within the 50-foot right-of-way delineated in the contract before Panhandle's liability to the injured party had been judicially determined and to charge the same to Panhandle's account. It was further agreed that if any dispute arose regarding Phillips' settlements, Panhandle would not be liable provided it was subsequently determined that the work was performed in a reasonable and workmanlike manner. Such contractual provisions are sometimes inserted in construction contracts. 30 Tex.Jur.2d Indemnity p. 459, sec. 14. Contrary to plaintiffs' contention, the contractual provisions relied upon do not have the effect of discharging Panhandle from its obligation to indemnify Phillips. For this reason, the reservation in the release was not effective to preserve their right to sue Phillips.

Under the second point, Phillips asserts that the court erred in awarding plaintiff, O. B. McKown, a recovery on damages for physical pain and mental anguish because there is no evidence to support such finding.

In response to Special Issues 19 through 23, the jury found: (19) Phillips agreed not to place dirt, rock, or equipment on O. B. McKown's cemetery area; (20) Phillips placed dirt, rocks, etc., on land that it knew or should have known was the cemetery area; (21) it was not reasonably necessary to place dirt, rocks, etc., on the cemetery area in laying the line; (22) McKown sustained physical pain and mental anguish as a result of Phillips placing dirt, rocks, etc., on the cemetery area; and (23) that McKown suffered damages in the amount of $25,000.00.

The evidence shows that the cemetery area was situated near the area where the pipeline was to be constructed. It consisted of approximately one acre. Although it was not fenced, McKown testified he kept it mowed, and because of this, the boundaries were visible on the ground. He testified his daughter was buried in the north end of the one-acre plot which the evidence shows was some 175 feet away from the alleged encroachment. It is not contended that any

---

**4.** Paragraph XXII of the contract provides as follows:

"XXII. DAMAGE CLAIMS

"A. Any damages or expenses incurred or occasioned by any acts of omission or commission of the contractor and connected with or growing out of the performance of the contract shall be settled in the following manner.

"1. Company right of way division will settle all claims for property damage within the right of way. Contractor shall not be liable for any damages to land, pasture, shrubs, trees, crops or vegetation of any kind occasioned by reasonable and workmanlike performance under the contract within the right of way."

desecration of the grave occurred. The testimony shows that when Phillips' engineers contacted McKown to advise him that the pipeline would be laid across his land, he advised them of the cemetery and told them that the cemetery area was not to be disturbed in any manner whatsoever. He testified they agreed that they would not interfere with the cemetery area. In constructing the line, Panhandle encroached on a small area at the south end of the area by allowing some dirt and rock from the excavation to fall thereon. McKown testified that Panhandle placed some of its equipment in the area.

Under the contract between Phillips and Panhandle, it was agreed that Panhandle was to do the work within a 50-foot right-of-way as set forth therein. Although the North boundary of the right-of-way was near the south end of the cemetery area, the right-of-way did not embrace any part of the cemetery. Had Panhandle not breached its agreement to stay within the 50-foot right-of-way, this phase of the controversy would not have arisen.

It appears from the briefs that the parties disagreed as to whether plaintiff McKown's recovery of physical pain and mental anguish is based on tort or contract. Phillips argues that the finding establishes a cause of action for a breach of contract and briefed the point on that basis. In reply, McKown argues that the recovery here is in tort as shown by the following quotation in his brief:

"Mr. McKown pleaded and offered proof that Phillips trespassed on the cemetery. * * * No objection was made to the omission of the word 'trespass' from the charge. * * * Phillips now, somewhat astonishingly (and contrary to the statements made by its counsel in open court at the time of preparation of the charge), takes the position that only a cause of action for tortious breach of contract and not for trespass was submitted to the jury.

"The cemetery area belonged to Mr. McKown. Phillips placed rock, dirt, and equipment in the cemetery area. In an-

swering Special Issue No. 21 the jury found that this invasion of the cemetery was not reasonably necessary in laying the line. This submission of Special Issue No. 21 would have been superfluous if Mr. McKown had been submitting only a 'breach of contract' theory as now claimed by Phillips. Conversely, Special Issue No. 21 alone, since it was submitted without objection, would support a judgment for damages for trespass. Even if some element of the trespass pleaded and proved by Mr. McKown had not been submitted, which is denied, Phillips has not preserved any alleged error in the submission of the trespass. * * * Phillips had no right, even under its own theory of this case, to occupy any unreasonable, unnecessary part of Mr. McKown's property. As to any such area that it did use, Phillips was a trespasser. See 56 Tex.Jur.2d, Trespass, Sections 1–8; *Phillips v. Clear Creek Properties*, 553 S.W.2d 389 (Tex.Civ.App.—Austin, 1977, writ ref'd n. r. e.) (Phillips has no right to use a 'temporary working space' outside its easement and was a trespasser outside the easement)."

In view of the foregoing statements, it is clear that McKown takes the position that his recovery here is based on tort rather than contract. Accordingly, we will adopt his theory. Proceeding on this theory, and remembering that plaintiffs released and agreed to protect Panhandle, Phillips' indemnitor, plaintiff here is in no position to recover damages for pain and anguish against Phillips for the same reason he was ruled to be unable to recover damages for injury to land as explained in our discussion under the first point of error.

Perhaps we should stop here; however, we feel there is another reason why the judgment on this phase of the case cannot be sustained.

■ The general rule sustained by authorities is that, where the negligence of two or more produces liability for a single indivisible injury and settlement in full for said injury is made by the aggrieved party with one of the parties liable, the same

inures to the benefit of all other parties responsible for the injury. *Hunt v. Ziegler,* 271 S.W. 936, 938 (Tex.Civ.App.—San Antonio 1925), 280 S.W. 546 (Tex.Comm'n App. 1926, jdgmt adopted); *Bradshaw v. Baylor University,* 126 Tex. 99, 84 S.W.2d 703 (Tex. Comm'n App.1935, opinion adopted); *Pearce v. Hallum,* 30 S.W.2d 399, 401 (Tex. Civ.App.—Dallas 1930, writ ref'd). While we recognize that the relationship of master and servant or principal and agent does not exist in the present case, as it did in the cases just cited, we think the relationship between Phillips and its independent contractor is analogous in view of the fact that the independent contractor had a contractual duty to indemnify Phillips.

In *Spradley v. McCrackin,* supra, we quoted from 76 C.J.S. Release § 50b, p. 689, as follows:

> " 'In a situation where several persons are not actively joint tort-feasors, but one person commits the tort and is primarily liable while the liability of the other person is derivative or secondary, *as where it arises under the doctrine of respondeat superior, the releasor's acceptance of satisfaction from one, discharges the other as well, as in the case of master and servant or principal and agent*; and it has been held that this is true despite an attempted reservation of rights against the person secondarily liable, since if the rule were otherwise, such person would be liable without having recourse against the person primarily liable, the latter having been released, . . . .' " (Emphasis supplied.)

■ In the instant case, plaintiffs sought judgment against Phillips and Panhandle, jointly and severally. It is undisputed that the encroachment on the cemetery area was caused by Panhandle. Therefore, Panhandle was primarily liable to McKown. Panhandle was liable to Phillips for trespassing on the cemetery area under the terms of its express indemnity contract. McKown released Panhandle and thereby accepted satisfaction in full for his physical pain and mental anguish as shown by the release. The satisfaction accepted by him was for the entire injury, for the single cause of action, and although it moved from only one of the alleged wrongdoers, no foundation remained for any claim against the other. The cause of action was extinguished. *Hunt v. Ziegler,* supra (citing cases).

It follows that the portion of the judgment subjecting Phillips to liability for McKown's physical pain and mental anguish cannot stand.

Only one thing remains. In response to Special Issue No. 16, the jury found that the plaintiffs were entitled to recover the sum of $134.40 to compensate them for their crop damage. Since Phillips concedes that plaintiffs are entitled to judgment for their crop damage, it follows that the judgment in this respect must be affirmed. Accordingly, that portion of the judgment awarding the plaintiffs a recovery for the sum of $134.40 for crop damage is affirmed, but that portion of the judgment awarding plaintiffs damages for injury to the land and awarding O. B. McKown damages for mental pain and suffering, is reversed and judgment is hereby rendered that the plaintiffs take nothing on their claim for damages to the land and that O. B. McKown take nothing on his claim for physical pain and mental anguish.

In view of the ruling we have made, we do not reach the remaining points of error briefed by Phillips.

Affirmed in part and reversed and rendered in part.