**Noah TULL et ux., Appellants,**

v.

**SAN PATRICIO ELECTRIC COOPERATIVE, INC., Appellee.**

**No. 1277.**

Court of Civil Appeals of Texas, Corpus Christi.

March 31, 1978.

Rehearing Denied April 20, 1978.

F. Van Huseman, Maddin, White & Brin, Inc., Corpus Christi, for appellants.

George G. Brin, Dyer, Redford, Burnett, Wray & Woolsey, Corpus Christi, for appellee.

## OPINION

BISSETT, Justice.

Noah Tull and wife, Nelda Sue Tull, sued San Patricio Electric Cooperative, Inc., hereinafter referred to as the "Company", for injuries resulting from an electrical shock received by Tull while he was operating a crane in close proximity to a Company line. At the close of the evidence following a jury trial, the trial court directed a verdict for the Company and thereafter entered judgment in its favor. Plaintiffs, hereinafter called "Tull", appeal.

"Defendant will be entitled to an instructed verdict if *either* (a) in each theory of recovery relied upon by the plaintiff there is at least one fact proposition, constituting a component element, asserted by the plaintiff, as to which the plaintiff's evidence is so meagre or the defendant's evidence is so compelling that reasonable men could not differ as to the conclusion that such proposition is not established; or (b) each theory of recovery as to which plaintiff has raised an issue of fact on all component elements is destroyed by some affirmative defense applicable thereto as to which the truth of every component fact proposition asserted by the defendant has been so conclusively established that reasonable minds cannot differ." McDonald's Texas Civil Practice, Vol. 3, § 11.28.1 (1970).

We review the evidence in the light most favorable to Tull. *Rogers v. Searle,* 544 S.W.2d 114 (Tex.Sup.1976).

Tull contends that there was evidence that the Company was negligent in failing to warn him of the danger of working in close proximity to the high voltage line in question when the Company knew, or in the course of ordinary care should have known, that he (Tull) regularly worked with his equipment close to the line. He further contends that since the incident made the basis of this lawsuit happened on September 19, 1975, that Tex.Rev.Civ.Stat.Ann. art. 2212a (Supp.1976), the "Comparative Negligence Statute", applies, and that the instructed verdict "ignores the possibility of a jury determining Tull's alleged negligence to be less than 51% of the total operative negligence."

The Company, among the several arguments advanced for affirming the judgment which has been appealed, argues that the trial court properly granted its motion for an instructed verdict because: 1) there is no evidence that it breached a duty to warn Tull of the dangers of his activities, and 2) the evidence conclusively shows that the injuries sustained by Tull resulted from his violation of Tex.Rev.Civ.Stat.Ann. art. 1436c (Supp.1978) We agree. The applicable sections of the statute are set out in the footnote.[1]

The incident made the basis of this suit happened on September 19, 1975. Tull was the owner of a scrap metal business, which he operated at his residence. He used a crane in that business and was operating the crane when he was injured. He ordinarily worked in the "back of his house", away from the overhead high voltage lines in front of his house. However, when his back yard was flooded, he would work in his front yard. On occasions, prior to the accident of September 19, 1975, he had operated within six feet of the overhead high voltage lines which were owned and operated by the Company, although he had never before operated as close as he was on that morning.

On the day of the accident, the only dry place to work was in Tull's front yard. Tull began raising the boom on the crane to its operating position; he continued until he noticed that the boom was within eight to twelve inches of the lines, whereupon he dug his foot into the wet dirt and attempted, by manipulating the controls on the crane, to move the boom away from the lines. It was at that time that he received an electric shock, and sustained severe injuries. He explained that the "rig cable" drew an arc of electricity from the lines without any physical contact.

It is undisputed that a Company employee, on several occasions before the accident, had seen Tull working with the crane. The employee did not warn Tull that he was working in a place of danger. Tull said that the employee "slowed down and watched me working", and would "just about come to a complete stop, just coast by real slow." However, there is no evidence as to how close Tull was working to the

1. "Sec. 3. Unless danger against contact with high voltage overhead lines has been effectively guarded against . . . no person . . . shall . . . perform any function or activity upon any land . . . if at any time during the performance of any function or activity, it is possible that the person performing the function or activity shall move or be placed within six feet of any high voltage overhead line or if it is possible for any part of any tool, equipment, machinery, or material used by such person to be brought within six feet of any high voltage overhead line during the performance of any such function or activity.

\* \* \* \* \* \*

Sec. 5. No person . . . shall . . . operate any crane . . . or similar apparatus, any part of which is capable of vertical, lateral, or swinging motion, unless:

\* \* \* \* \* \*

(2) there shall be installed an insulated cage-type guard or protective device about the boom or arm of all equipment . . .

Sec. 5A [t]he operation of . . . machines within 10 feet of any high voltage overhead line shall be unlawful unless danger against contact with high voltage overhead lines has been effectively guarded against pursuant to the provisions of Section 6 of this Act.

\* \* \* \* \* \*

Sec. 7(b) If a violation of this Act results in physical or electrical contact with any high voltage overhead line, the person, . . . violating the provisions of this Act shall be liable to the owner . . . of such high voltage line for all . . . liability incurred by such owner or operator as a result of any such contact."

lines when the employee drove by; and there is no evidence that the employee, from his position on the road, could have determined that Tull was working in an area less than six feet underneath the lines.

Before there is a duty to warn, actual knowledge rather than constructive knowledge of the dangerous condition is required. *State v. Tennison,* 509 S.W.2d 560 (Tex.Sup. 1974). Here, there is no evidence that the employee, while driving along the road in front of Tull's residence, could determine how close Tull's crane was to the lines, or whether it was apparent to the employee that Tull was working near danger. There is no evidence that the employee had actual notice that Tull was working in a place of danger and that a dangerous condition existed.

 We hold that there was no evidence that the employee of the Company had actual knowledge that Tull, on the occasions prior to the accident when the employee should have seen him working near the high voltage lines, was then in a place of danger. Under those circumstances, the Company was not under a duty to warn Tull of any danger associated with his activities.

It is conclusively shown by the evidence that at the time in question, Tull, the owner of the crane, was operating the crane in closer proximity to the overhead high voltage lines than permitted by Tex.Rev. Civ.Stat.Ann. art. 1436c (Supp.1978). That activity constituted, prima facie, a violation of the statute. If Tull was to escape the consequences of such violation, it was incumbent upon him to go forward with the evidence and show that his working within the statutorily prohibited area was permissible because he had installed the required safety equipment on the crane. See *Hammer v. Dallas Transit Company,* 400 S.W.2d 885 (Tex.Sup.1966). Tull did not meet his burden.

Under the record here presented, the trial court properly granted the Company's motion for an instructed verdict. No issues of fact are raised by the evidence. The undisputed facts, when considered in proper context, establish as a matter of law that the Company was under no duty to warn Tull of any danger. The evidence further conclusively establishes that the injuries complained of by Tull in this lawsuit were caused by a violation of the statute which resulted in an electrical contact with the high voltage line. Concerning the complaint by Tull that the instructed verdict prevented a jury from determining the degree of negligence of the parties, assuming, arguendo, that the Company was negligent, it is conclusively shown by the evidence that Tull's negligence was more than "51% of the total operative negligence".

The judgment of the trial court is AFFIRMED.