Leroy MOORE, Sr. and Wife Josephine
Moore, Plaintiffs-Appellees,

v.

SOUTHWESTERN ELECTRIC POWER
COMPANY, Defendant-Third-Party
Plaintiff-Appellant,

v.

VALMAC INDUSTRIES, INC., Third-
Party Defendant, Appellee.

No. 83–2266.

United States Court of Appeals,
Fifth Circuit.

July 30, 1984.

Rehearing and Rehearing En Banc
Denied Aug. 28, 1984.

Tate, Circuit Judge, dissented and filed opinion.

Kenley, Boyland, Coghlan & Griffin, Herbert Boyland, Longview, Tex., for defendant-third-party plaintiff-appellant.

Mike Smith, Gilmer, Tex., Mark P. McMahon, Longview, Tex., for Moore.

Ramey, Flock, Hutchins, Jeffus, McClendon & Crawford, Mike A. Hatchell, Tyler, Tex., for Valmac.

Before RANDALL, TATE and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

In this Texas diversity action, Josephine and Leroy Moore, Sr. sought damages from Southwestern Power Company (SWEPCO) for personal injuries arising out of the death of plaintiffs' son, Leroy Moore, Jr. Moore was fatally injured when he touched a live haul truck that had become electrically charged from contact with an electric power line owned by SWEPCO. On submission by special interrogatories, the jury found SWEPCO 40% negligent.

The district court denied SWEPCO's motion for judgment *non obstante veredicto*.

Concluding that plaintiff's claim was extinguished due to a series of indemnity agreements, we reverse and render a judgment in favor of defendants.

## I. FACTS

The facts in this case are undisputed. The accident in question occurred on July 10, 1979. At the time of the accident, Leroy Moore, Jr., a 17 year old young man, was working for Valmac Industries, a chicken processing company in Tenaha, Texas. While loading chickens on a truck from a chicken house on Valmac's premises, Moore was electrocuted when the truck he was working on became energized by contact with a SWEPCO power line.

Josephine and Leroy Moore, Sr., parents of the decedent, brought a workers' compensation claim against Valmac. Valmac denied that Moore was an employee of Valmac at the time of the accident, contending instead that Moore was an independent contractor. Nevertheless, United States Fidelity and Guaranty Company, Valmac's workers' compensation insurer, entered into a Compromise Settlement Agreement with plaintiffs for $16,250. In return, plaintiffs signed an agreement releasing Valmac and its insurer from any claims to which plaintiffs might be entitled by reason of their son's death. Plaintiffs further agreed to indemnify defendants and hold them harmless from any further claims growing out of the occurrence.

The Moores then brought this action against SWEPCO, under the Texas Wrongful Death Act, Tex.Rev.Civ.Stat.Ann. art. 4671 et seq. (Vernon 1952), seeking damages for the death of their son. SWEPCO, in turn, filed a third-party action against Valmac, claiming that Valmac had violated the Public Utilities Act, Tex.Rev.Civ.Stat. Ann. art. 1436c (Vernon 1980), by allowing its employee to come within six feet of high voltage power lines, and that as a result of this violation, Valmac was required to indemnify SWEPCO under § 7(b) of the statute for any damages arising from Moore's death.

Valmac claimed immunity from further liability. The company contended that Article 1436c, § 7(b) did not require indemnification on these facts. Valmac also claimed immunity based on the compromise and settlement agreement with the Moores, and sought judgment as counter-plaintiff against the Moores for any damages that Valmac might incur in the action. The trial court held that Valmac was a tortfeasor as a matter of law due to its violation of Article 1436c, and dismissed Valmac from the suit.

After the evidence was presented, SWEPCO made a motion for directed verdict. SWEPCO first argued that there was insufficient evidence presented for a jury reasonably to find negligence or proximate cause. Second, and of prime significance in this case, SWEPCO argued that even if the evidence *was* sufficient to find negligence, a directed verdict in its favor was proper because plaintiffs' action had been extinguished through a circuitous series of indemnification obligations. The pattern of indemnification argued by SWEPCO is as follows: (1) SWEPCO was entitled to indemnification from Valmac based on Valmac's violation of Article 1436c, as discussed above; (2) Valmac, in turn, was entitled to indemnification from the Moores under the contractual provisions of their settlement and release agreement with Valmac. Thus, SWEPCO ultimately would recover from Valmac any payments made to plaintiffs, and plaintiffs ultimately would reimburse Valmac for any payments made by Valmac to SWEPCO. Since the net result for plaintiffs would be zero recovery, SWEPCO argued that plaintiffs simply should be denied recovery from defendants at the outset as a matter of law.

The trial court denied SWEPCO's motion and submitted the case to the jury. In answer to special interrogatories, the jury found that both SWEPCO and Valmac were negligent. It determined that SWEPCO's negligence was 40% and a proximate cause of the accident, and that Valmac's was 60% and a proximate cause. The jury assessed damages at $300,000 for Leroy Moore's conscious pain and suffering and

$120,000 for the Moore's loss of their son. The district court entered a judgment awarding plaintiffs $168,000—forty percent of $420,000.

SWEPCO appeals, based on the two arguments mentioned above, and on the additional ground that the jury award of $300,-000 for conscious pain and suffering was excessive.

After reviewing relevant Texas law, we agree with SWEPCO's argument that plaintiffs' claim was extinguished by virtue of the two indemnification obligations. As a result, the trial court should not have submitted the question of SWEPCO's liability to the jury, but instead should have granted the defendant's motion for an instructed verdict or alternatively, for judgment *non obstante veredicto*. Because of this conclusion, we do not address the alternative arguments presented by SWEPCO on appeal.

## II. INDEMNITY

A. *Article 1436c—Indemnification of SWEPCO by Valmac*

■ SWEPCO contends that it is entitled to full indemnification by Valmac for any claims arising out of Moore's death because Valmac violated section 1436c of the Public Utilities Act, Tex.Rev.Civ.Stat.Ann. art. 1436c (Vernon 1980). Article 1436c sets forth the statutory duty of an employer performing any activity within six feet of a high voltage overhead line. The relevant portions of Article 1436c provide:

Sec. 3. Unless danger against contact with high voltage overhead lines has been effectively guarded against pursuant to the provisions of Section 6 of this Act, no ... firm, corporation, or association shall ... perform any function or activity upon any land ... or other premises if at any time during the performance of any function or activity, it is possible that the person performing the function or activity shall move or be placed within six feet of any high voltage

overhead line or if it is possible for any part of any tool, equipment, machinery, or material used by such person to be brought within six feet of any high voltage overhead line during the performance of any such function or activity.

Sec. 4. Unless danger against contact with high voltage overhead lines has been effectively guarded against pursuant to the provision of Section 6 of this Act, no ... firm, corporation, or association shall ... operate, move, transport, handle ... any tool, machinery, equipment, supplies, materials ... or any part thereof within six feet of any high voltage overhead line.

Sec. 6. When any ... firm, or corporation desires to temporarily carry on any function, activity, work, or operation in closer proximity to any high voltage overhead line than permitted by this Act, the person or persons responsible for the work to be done shall promptly notify the operator of the high voltage line. The work shall be performed only after satisfactory mutual arrangements have been negotiated between the owner or the operator of the lines or both and the person or persons responsible for the work to be done for temporary mechanical barriers separating and preventing contact between material, equipment, or persons and high voltage electric lines, temporary deenergization and grounding, or temporary relocation or raising of the lines. The actual expense incurred by any operator of high voltage lines in providing clearances as above set out shall be paid by the person or persons responsible for the work to be done in the vicinity thereof and the operator of the lines may require such payment in advance, such operator being without obligation to provide such clearance until such payment shall have been made.... The operator of the lines shall be given not less than 48 hours advance notice to arrange for such temporary clearances.

The trial court ruled, as a matter of law that Valmac had violated Article 1436c.[1]

**1.** The court did not specify which provision of

Article 1436c was violated by Valmac. The

Section 7(b) of Article 1436c states the consequences of such a violation:

> If a violation of this Act results in physical or electrical contact with any voltage overhead line, *the ... firm, corporation, or association violating the provisions of this Act shall be liable to the owner or operator of such high voltage line for* all damages to such facilities and for *all liability incurred by such owner or operator as a result of any such contact.* (Emphasis added.)

SWEPCO takes the position that pursuant to § 7(b), Valmac is required to indemnify SWEPCO for "all liability" incurred, including any liability incurred as a result of SWEPCO's own negligence.

In response, Valmac argues that § 7(b) was not intended to indemnify a utility for its *own* negligence, but only for liability which could be attributed to a third party's violation of the statute. Further, Valmac argues that under the Workers' Compensation Act, Tex.Rev.Civ.Stat.Ann. art. 8306, § 3 (Vernon 1967), a negligent third party is barred from seeking contribution or indemnity from an employer who has previously made full payment pursuant to the workers' compensation laws. *See Grove Manufacturing Co. v. Cardinal Construction Co.*, 534 S.W.2d 153 (Tex.Civ.App.—Houston, 1976, writ ref'd n.r.e.). Valmac further urges the general proposition that the courts of Texas disfavor interpretations allowing indemnification for a party's own negligence, *see, e.g., Eastman Kodak Co. v. Exxon Corp.*, 603 S.W.2d 208 (Tex.1980), and that Article 1436c is in abrogation of common law and should be interpreted strictly. *See Ringo v. Gulf States Utilities Co.*, 569 S.W.2d 31, 34 (Tex.Civ.App.—Beaumont 1978, writ ref'd n.r.e.).

Faced with these statutory conflicts, our first task is to determine whether by em-

court instructed the jury that Valmac violated Article 1436c because the company was one of the entities responsible for work conducted within the six foot and ten foot provisions of the statute, and because it was undisputed that Valmac equipment touched the power line.

ployment of the expression "all liability incurred" in § 7(b), the Texas Legislature intended that an entity violating Article 1436c would indemnify the power company solely for the liability incurred by the violator's negligence, or whether alternatively, indemnification by the violator was intended to encompass liability resulting from the power company's own negligence, as well. The parties do not contest the fact that Texas law applies in this case. "In a case where state substantive law governs, this Court is obliged to apply the law of that state as interpreted by its highest court." *Scarborough v. Northern Assurance Co. of America v. Columbia Casualty Co.*, 718 F.2d 130, 136 (5th Cir.1983).

Although we find no Texas Supreme Court decisions dealing with § 7(b) or any other provision of Article 1436c, an intermediate appellate court in Texas has interpreted and applied the statute on closely analogous facts. In *Houston Lighting & Power Co. v. Eller Outdoor Advertising Co. of Texas*, 635 S.W.2d 133 (Tex.App.—Houston 1982, writ ref'd n.r.e.), Tommy Miller, an employee of Eller Outdoor Advertising, was electrocuted when he came into contact with a power line owned and operated by Houston Lighting & Power Company (HL & P). Just as in the present case, Miller's family recovered workers' compensation benefits from the employer. Subsequently, the family filed a wrongful death action against HL & P, which was settled.[2] HL & P then brought an indemnification suit against Eller for the amount of the settlement. The trial court entered judgment for Eller, holding that the Workers' Compensation Act precluded HL & P's suit for indemnification, since Article 8306, § 3 specifically provides that a subscriber to workers' compensation insurance has no liability to reimburse or hold harmless a non-subscribing third party tortfeasor.

2. *Eller* is factually distinguishable from the present case in that the plaintiffs in *Eller* settled their suit with the power company while the plaintiffs in the present case proceeded to trial and secured a judgment against the power company. For purposes of the issue involved in this case, however, there is no relevant legal distinction between a settlement and a judgment.

Tex.Rev.Civ.Stat.Ann. art. 8306, § 3 (Vernon 1967).

The Court of Civil Appeals reversed, and held that in an action arising from a breach of an employer's statutory duty under Article 1436c of the Public Utilities Act, a power company held liable in a third party action *was* entitled to indemnification from the employer. The court reached this decision by reasoning that such an action was not "on account of" [3] injury or death of the employee, but arose instead from the employer's breach of the Public Utilities Act. The court concluded that the Public Utilities Act would be rendered meaningless if the Workers' Compensation Act barred indemnity, since "the clear intent of the legislature was to hold an employer liable for violations of the Public Utilities Act." *Houston Lighting & Power Co. v. Eller Outdoor Advertising Company of Texas, supra,* 635 S.W.2d at 135 (Tex.App.—Houston 1982, writ ref'd n.r.e.).

The effect of an Article 1436c violation was also discussed in *Tull v. San Patricio Electric Cooperative, Inc.,* 564 S.W.2d 192 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.). In this case, a self-employed plaintiff brought an action against the electric cooperative for injuries sustained from an electric shock received when the crane that plaintiff was operating came in close proximity to an overhead high-voltage line.[4] The Court of Civil Appeals affirmed a directed verdict in favor of defendant. The court held, inter alia, that the injuries sustained by Tull resulted from his own violation of Article 1436c, and since Tull did not meet the burden of proving that he had taken adequate safety precautions, he could not "escape the consequences of [his] violation." *Id.* at 195. In footnote, the court cited § 7(b) of the statute, implying that the consequence of violating Article 1436c was responsibility for all liability incurred,[5] and thus preclusion from recovery against the power company.[6]

While it is true that Texas courts will not generally interpret statutes or contracts to permit indemnification for a party's own negligence, the above cases indicate that the only courts that have spoken on the issue in Texas find that the Texas Legislature intended to make an exception to this general principle for cases arising under Article 1436c. Absent clear indication that the Supreme Court of Texas would decide this issue differently, the decisions of these intermediate courts are controlling. *Mott v. Mitsubishi,* 636 F.2d 1073, 1074 (5th Cir.1981).[7]

3. Article 8306, § 3 states that:
   If an action for damages *on account of* ... death of an employee of a subscriber is brought by ... the representatives of such deceased employee ... and ... results in a judgment ... the subscriber ... shall have no liability to reimburse ... such other person ... Tex.Rev.Civ.Stat.Ann. art. 8306, § 3 (Vernon 1967) (emphasis added).

4. Tull received an electric shock despite the fact that his crane never actually came into contact with the power line; the shock resulted when a rig cable on the crane drew an arc of electricity from the line.

5. It is significant that the plaintiff in *Tull* was self-employed. A mere employee who violates Article 1436c is *not* responsible for all liability incurred, and is not precluded from recovery against the power company. *Sun Oil Company v. Massey,* 594 S.W.2d 125, 131 (Tex.Civ.App.—Houston 1979, writ ref'd n.r.e.). This is true because an employee typically has no authority to negotiate with the power company or bind his employer to an agreement to pay for any necessary precautionary measures. *Ringo v. Gulf States Utilities Company,* 569 S.W.2d 31, 34 (Tex.Civ.App.—Beaumont 1978, writ ref'd n.r.e.).

6. The court also based its affirmance of the directed verdict on a conclusion that the power company had no duty to warn of danger on these facts, and that Tull's negligence was more than 51% of the total operative negligence.

7. We cannot certify this question of Texas law to the Supreme Court of Texas to obtain the definitive resolution of this issue. The Texas court has held it does not have the authority under the Texas Constitution to answer such certified questions. *United Services Life Insurance Company v. Delaney,* 396 S.W.2d 855 (Tex. 1965). The Supreme Court of the other two states in the Fifth Circuit, Louisiana and Mississippi, do receive such certifications. *See Humphrey v. C.G. Jung Educational Center of Houston,* 714 F.2d 477, 478 n. 1 (5th Cir.1983).

## B. *Settlement—Indemnification of Valmac by Plaintiffs*

█ We have determined that under Article 1436c, § 7(b), Valmac must indemnify SWEPCO for whatever amount SWEPCO is required to pay plaintiffs. We next examine the agreement between plaintiffs and Valmac. The relevant clause in the workers' compensation settlement agreement states:

> NOW, THEREFORE, KNOW ALL MEN BY THESE PRESENTS: That We, Leroy Moore, Sr. and wife, Josephine Moore, in consideration of the sum of SIXTEEN THOUSAND TWO HUNDRED FIFTY AND NO/100 ($16,250.00) DOLLARS, ... do hereby RELEASE, DISCHARGE and FOREVER ACQUIT Valmac Industries, Inc. and United States Fidelity and Guaranty Company from any and all claims to which the undersigned may be entitled by reason of the death of their son, Leroy Moore, Jr., ... hereby agreeing to indemnify and hold harmless Valmac Industries, Inc. and United States Fidelity and Guaranty Company from any further claim, demand, or cause of action whatsoever, whether herein mentioned or not, growing out of or in any way resulting or to result from the aforementioned occurrence forming the basis of this claim.

Plaintiffs do not dispute that pursuant to this settlement, they are obligated to indemnify Valmac from any further claims resulting for Leroy Moore, Jr.'s death. Nor could they. The settlement agreement clearly indicates that indemnification is required by plaintiffs.

In summary, plaintiffs are entitled to recover $168,000 from defendant SWEPCO, and SWEPCO is entitled to recover $168,000 from Valmac. Valmac, in turn under the settlement agreement, is entitled to recover from plaintiffs. Plaintiffs, therefore, under their own settlement agreement with Valmac are not entitled to any recovery. When such circular patterns of indemnity develop, Texas courts resolve the matter by denying recovery to plaintiffs. In *Panhandle Gravel Co. v. Wilson,* 248 S.W.2d 779 (Tex.Civ.App.—Amarillo 1952, writ ref'd n.r.e.), for example, the Texas Court of Civil Appeals dealt with circular indemnification by denying recovery. In that case, the court determined that a separate settlement in a negligence action was in effect a release and indemnification agreement by plaintiffs of two defendants and their insurer. When the court additionally determined that these defendants were required to indemnify a third defendant, the court concluded that the third defendant could plead the first settlement as a release in defense to plaintiff's suit against him.

A plaintiff's claim was similarly eliminated by a series of indemnity agreements in *Phillips Pipe Line Company v. McKown,* 580 S.W.2d 435 (Tex.Civ.App.—Tyler 1979, writ ref'd n.r.e.) In this case, an independent contractor agreed to indemnify a pipeline owner from any claims by third parties for damages from construction of the pipeline. Subsequently, various landowners brought suit against the independent contractor, claiming that the pipeline construction injured their land. Plaintiff landowners ultimately settled with the independent contractor and agreed to indemnify the contractor from any claims the pipeline owner might have against it. When the landowners then brought an action against the pipeline owner, their action was dismissed. The court of appeals held that by releasing the independent contractor, plaintiffs effectively had released the pipeline owner as well, based on the contractor's duty to indemnify the pipeline owner. This result was reached because it was "obvious that it could not have been the intention of the parties to the settlement agreement that [the independent contractor], in order to recover the loss from a judgment based on its indemnity provision if sued by [the pipeline owner] on the contract, would then be entitled to turn around and sue [plaintiff] in a circuitous action." *Id.* at 440.

Since the Moores effectively extinguished their claim against SWEPCO by settling with and agreeing to indemnify Valmac, the district court erred in submit-

ting SWEPCO's negligence to the jury and properly should have ruled in SWEPCO's favor as a matter of law. This conclusion eliminates any need to discuss the issue of damages. There is no damage liability.

REVERSED AND RENDERED.

TATE, Circuit Judge, dissenting:

I respectfully dissent.

The effect of the majority opinion is to hold that a Texas employee, by settling his Texas Workers' Compensation claim against his employer, likewise extinguishes any tort cause of action he may have against an electrical utility for his wrongful death or injury caused by a high voltage electrical line. The basis for the majority's holding is a section of the Texas Public Utilities Act that entitled the utility to indemnification from the employer for permitting the deceased employee to work in proximity to ineffectively guarded high-voltage electrical lines, and its purported result in combination with compensation settlement (including a routine hold harmless indemnification) executed by the decedent's survivors with his employer.

With deference for the views of the majority, the result reached, although not illogical, flouts the intent of both public utility and worker-compensation statutes to provide, through economic disincentive, protection of workers injured at work by reasons of hazards posed by high-voltage electrical lines.

The majority relies upon *Houston Lighting & Power Co. v. Eller Outdoor Advertising Co. of Texas*, 635 S.W.2d 133 (Tex. App.1982), writ ref'd n.r.e., a decision I find distinguishable and inapposite. This decision concerned a suit by a utility against an employer to be indemnified, by reason of the Public Utility Act, for the tort recovery against it on behalf of the worker's survivors. There, the Texas intermediate court held that a provision of the Texas Workers' Compensation Act—that protected the employer against indemnification of third per-

sons for their tort liability to an employee—did not bar this suit by the utility. The reasoning of the court was that the clear intent of the subsequently enacted Public Utilities Act provision "was to hold an *employer* liable for violations of the Public Utilities Act" and that this construction was "most consistent in *protecting* workers in this state, and in assuring that employers will follow minimum statutory requirements while performing work near hazardous high voltage lines." 635 S.W.2d at 135 (emphasis added).

Contrary to this legislative intent, the majority holds that, by the settlement with the employer of an electrocuted employee's workers' compensation claim, both the public utility and the employer are immunized from liability for their joint negligence (in the utility creating a high-voltage hazard and in the employer permitting its workers to work near an ineffectively guarded high-voltage line). Dissenting, I would hold, in view of this statutory construction and these statutory purposes, that the Public Utilities Act conferred upon the utility a statutory right to indemnification from the employer for high-voltage hazards permitted by the employer, but that—especially in view of the strong Texas public policy disfavoring indemnity for a party's own negligence, see, e.g., *Eastman Kodak Company v. Exxon Corporation*, 603 S.W.2d 208 (Tex.1980) [1]—the worker-survivors' compensation settlement and agreement to indemnify the employer against other claims cannot be construed as constituting an agreement by the employee's survivors to indemnify the employer for claims brought against it for its own negligence *per se* by statutory violation (of a provision designed to protect the employee) of the Texas Public Utility Act.

I respectfully dissent.

---

1. Unlike the majority, I am unable to find, either from the Public Utility Act or from the two or three Texas intermediate decisions relied upon by the majority, any legislative intent that the Act intended to make an exception to this general principle. Nor can any functional or policy reason be ascribed for its so doing.