2007 UT App 362

**Vickie Lynn WARD, individually, as permanent guardian of Terry Faye Ward, and as conservator of the Estate of Terry Faye Ward, Plaintiff and Appellant,**

v.

**IHC HEALTH SERVICES, INC. dba McKay Defendant, Third-party Plaintiff, and Appellee,**

v.

**Mountain West Anesthesia, LLC, Third-party Defendant and Appellee.**

**No. 20070110–CA.**

Court of Appeals of Utah.

Nov. 8, 2007.

---

James W. McConkie II, Bradley H. Parker, and Jonathon T. Tichy, Salt Lake City, for Appellant.

Merrill F. Nelson, Justin W. Starr, George A. Hunt, and Elliott J. Williams, Salt Lake City, for Appellees.

Before BENCH, P.J., DAVIS and McHUGH, JJ.

## OPINION

BENCH, Presiding Judge:

¶ 1 Plaintiff Vickie Lynn Ward (Ward) appeals the trial court's decision granting summary judgment in favor of Defendant IHC Health Services, Inc. (the Hospital) and Third-party Defendant Mountain West Anesthesia, LLC (Mountain West). Because both documents signed by Ward in connection with the settlement of her medical malpractice suit against Mountain West are separate and enforceable contracts, the trial court did not err, as Ward contends, in ruling that the second of the two documents did not supersede or replace the first document. Also, the trial court did not err by granting summary judgment because the chain of indemnity agreements created a situation under which Ward could not be granted any meaningful relief.

## BACKGROUND

¶ 2 This case began when Ward's husband suffered brain injuries while undergoing a hernia operation at McKay–Dee Hospital in Ogden, Utah. Ward agreed to settle out of court with her husband's anesthesiologist, Dr. John Luckwitz (the Anesthesiologist), and his employer, Mountain West, for one million dollars. In effectuating the settlement, Ward signed the two documents that are at the center of this controversy.

¶ 3 The first document (the Settlement Agreement) settled any malpractice claims Ward may have had against the Anesthesiologist or Mountain West, releasing Mountain West and its employees from further liability. The Settlement Agreement expressly preserved Ward's potential claims against the Hospital or any of the Hospital's employees. The Settlement Agreement also included an indemnification clause by which Ward agreed to indemnify Mountain West and its employees for "all claims of Ward or others arising from or in any way connected with the actual or alleged acts of ... [the Anesthesiologist]," including claims for contribution.

¶ 4 Two weeks after signing the Settlement Agreement, Ward entered into an agreement with Mountain West's insurance

provider, Scottsdale Insurance Company, setting forth Ward's selection of an annuity method of payment by which she would be paid the bulk of her settlement award on a monthly basis (the Annuity Agreement). The Annuity Agreement did not contain language requiring Ward to indemnify Mountain West.

¶ 5 Ward then brought medical malpractice claims directly against the Hospital and the surgeon in charge of her husband's surgery. After the court dismissed those claims, Ward amended her complaint to assert an ostensible agency claim against the Hospital based on the negligence of the Anesthesiologist.[1] Once Ward implicated the Anesthesiologist's conduct as the basis for her claims against the Hospital, the Hospital filed a third-party complaint against Mountain West for indemnification. The third-party complaint was based on a pre-existing contract for anesthesia services between Mountain West and the Hospital (the Hospital Agreement), whereby Mountain West had agreed to indemnify the Hospital for liability based on the conduct of Mountain West employees.

¶ 6 Mountain West, joined by the Hospital, moved for summary judgment, which the trial court granted. The trial court ruled that the Settlement Agreement and the Annuity Agreement were both enforceable. Further, the trial court ruled that there was a "[c]hain of [i]ndemnity" whereby, even if Ward were to prevail on her ostensible agency claims, the Hospital would be contractually entitled to indemnification from Mountain West, which would in turn be entitled to indemnification from Ward herself. This circular indemnification, the trial court ruled, would prevent Ward from obtaining meaningful relief and therefore justified summary judgment in favor of Mountain West and the Hospital. Ward now appeals.

1. Utah law provides that "the release of one [or more] obligor[s] does not discharge co-obligors against whom the obligee in writing expressly reserves his rights." *Peterson v. Coca-Cola USA*, 2002 UT 42, ¶ 10, 48 P.3d 941 (quoting *Nelson v. Corporation of Presiding Bishop of Church of Jesus Christ of Latter-day Saints*, 935 P.2d 512, 514 (Utah 1997)). Therefore, despite the Settlement Agreement's language releasing "any and all [of

## ISSUES AND STANDARD OF REVIEW

¶ 7 Ward challenges the trial court's interpretation of the Settlement Agreement and the Annuity Agreement, which subsequently led the trial court to grant summary judgment in favor of Mountain West and the Hospital. "Summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law." *Peterson v. Sunrider Corp.*, 2002 UT 43, ¶ 13, 48 P.3d 918 (citing Utah R. Civ. P. 56(c)). " 'Because entitlement to summary judgment is a question of law, we accord no deference to the trial court's resolution of the legal issues presented.' " *Id.* (quoting *Ward v. Intermountain Farmers Ass'n*, 907 P.2d 264, 266 (Utah 1995)). The interpretation of unambiguous contracts is also a question of law, "and on such questions we accord the trial court's interpretation no presumption of correctness." *Sackler v. Savin*, 897 P.2d 1217, 1220 (Utah 1995) (internal quotation marks omitted). We will therefore review the trial court's grant of summary judgment, as well as the court's interpretation of contracts upon which the summary judgment was based, for correctness.

## ANALYSIS

I. Relationship Between the Settlement Agreement and the Annuity Agreement

¶ 8 Ward claims that the trial court erred by ruling that the Annuity Agreement did not supersede the Settlement Agreement, specifically arguing that the Annuity Agreement's integration clauses are sufficient to legally supersede the previously executed Settlement Agreement. "[W]e will assume that a writing dealing with the *same subject* was intended by the parties to supercede any

Ward's] claims ... arising out of or in any way connected with" the Anesthesiologist's conduct during the surgery, the trial court permitted the ostensible agency claim against the Hospital to move forward because Ward's claims against the Hospital were expressly reserved. Neither party has challenged this aspect of the trial court's ruling on appeal.

prior or contemporaneous agreements." *Novell, Inc. v. Canopy Group, Inc.*, 2004 UT App 162, ¶ 14, 92 P.3d 768. However, one contract will not supersede another " 'unless it is plainly shown that [such] was the intent of the parties; and this is usually where the later contract fully covers [the] earlier one.' " *Horman v. Gordon*, 740 P.2d 1346, 1351 (Utah Ct.App.1987) (quoting *Foote v. Taylor*, 635 P.2d 46, 48 (Utah 1981)).

¶ 9 Here, Ward signed the Settlement Agreement on March 16, 2001, and both Ward and the insurance company signed the Annuity Agreement by April 3, 2001. These two agreements are obviously related in that there would be no need for the Annuity Agreement but for the existence of the Settlement Agreement. However, the Annuity Agreement does not supersede the Settlement Agreement. While the Settlement Agreement sets forth the terms of the payment to Ward of one million dollars in exchange for a release of all claims against Mountain West and its employees, the Annuity Agreement focuses on the payment structure between Ward and Mountain West's insurance provider under which Ward will receive the underlying settlement amount.

¶ 10 Ward has not demonstrated that it was the intent of the parties to have the Annuity Agreement supersede or replace the Settlement Agreement. Ward merely concludes that the Settlement Agreement is invalidated or replaced by virtue of the integration clauses found in the Annuity Agreement, without arguing why or how these integration clauses invalidate the previously executed Settlement Agreement. Even though neither Mountain West nor the Hospital deny that the Annuity Agreement is in fact integrated, that integration does not operate to supersede previous agreements covering different subjects. *See Novell*, 2004 UT App 162, ¶ 14, 92 P.3d 768. The two agreements were created for independent reasons: the Settlement Agreement was created to memorialize the actual settlement between the parties while the Annuity Agreement was created to set forth the terms of Ward's selected payment structure. Because the Annuity Agreement does not "fully cover[ ]" the terms and intent of the

Settlement Agreement, it cannot be said that the Annuity Agreement supersedes the Settlement Agreement. *Horman*, 740 P.2d at 1351. Therefore, the Settlement Agreement, including the indemnification clause contained therein, is valid and enforceable.

## II. The Trial Court's Consideration of Extrinsic Evidence

¶ 11 Ward argues that the trial court impermissibly considered extrinsic evidence in ruling on the enforceability of the agreements and granting summary judgment. When faced with interpreting a contract, courts must make an initial legal determination of whether the contract is ambiguous. *See Ward v. Intermountain Farmers Ass'n*, 907 P.2d 264, 268 (Utah 1995) ("[R]ational interpretation requires at least a preliminary consideration of all credible evidence offered to prove the intention of the parties ... so that the court can place itself in the same situation in which the parties found themselves at the time of contracting." (alteration and omission in original) (internal quotation marks omitted)). To determine whether a contract is ambiguous, " '[a] judge should therefore consider any credible evidence offered to show the parties' intention[s].' " *Novell, Inc. v. Canopy Group, Inc.*, 2004 UT App 162, ¶ 21, 92 P.3d 768 (quoting *Ward*, 907 P.2d at 268). Further, "[i]n determining whether an agreement was intended to supersede a prior agreement, a court may consider extrinsic evidence as to the circumstances of the transaction, including the purpose for which the contested agreement was made." *Ringwood v. Foreign Auto Works*, 671 P.2d 182, 183 (Utah 1983).

¶ 12 In the instant case, the trial court considered extrinsic evidence to determine whether Ward's argument-that the integration clauses of the Annuity Agreement were intended to invalidate or supersede the Settlement Agreement-exposed a latent ambiguity as to the intent of the parties in creating the Annuity Agreement. The evidence considered by the trial court consisted of correspondence between counsel for the parties contemporary to the execution of the

Settlement Agreement. In the correspondence, Ward's counsel discussed the need for "an additional release" to which Mountain West would not be a party, and contemplated signing a "release with the annuity company" in order to complete the settlement. The trial court, after preliminarily considering this extrinsic evidence, ruled that the contracts were unambiguous and determined that the parties did not intend for the Annuity Agreement to supersede the Settlement Agreement.[2] The trial court considered the extrinsic evidence for the purpose of uncovering any ambiguity as to the parties' intent. Further, the evidence the trial court relied upon related directly to the context under which the Annuity Agreement was created. Therefore, the trial court did not improperly consider extrinsic evidence.

## III. Meaningful Judicial Relief

### A. The Hospital Agreement

¶ 13 Ward argues that the trial court improperly relied on the Hospital Agreement, which obligates Mountain West to indemnify the Hospital for claims arising out of the conduct of Mountain West employees, in deciding to grant summary judgment. Specifically, Ward contends that the Hospital Agreement was never properly before the trial court and that the court never examined the document before relying on its existence in granting summary judgment. These contentions are without merit. The Hospital Agreement was attached to Mountain West's memorandum in support of its motion for summary judgment, which was received by the trial court on September 20, 2006, and was incorporated into Mountain West's argument in the same memorandum. The trial court referenced the Hospital Agreement in its written order when it stated that "[the Hospital] has a contractual right to indemnification from Mountain West." While the trial court's reference to the Hospital Agreement may not be as detailed as Ward would prefer, Ward has not presented a valid legal argument as to why the trial court should be

prevented from considering and relying on the Hospital Agreement.

### B. Circular Indemnification

¶ 14 Ward's final contention is that the trial court erred by granting summary judgment based in part on the idea that the chain of indemnification created by the Settlement Agreement and the Hospital Agreement would prevent the court from granting any meaningful relief to Ward even if she prevailed on her claims against the Hospital. "When such circular patterns of indemnity develop, . . . courts resolve the matter by denying recovery to [the] plaintiffs," *Moore v. Southwestern Elec. Power Co.*, 737 F.2d 496, 501 (5th Cir.1984), and should resolve the case as a matter of law. *See id.* at 501–02. "Generally, courts will not allow parties to engage in circuitous action when the foreseeable end result is to put the parties back in the same position in which they began." *Wal–Mart Stores, Inc. v. RLI Ins. Co.*, 292 F.3d 583, 594 (8th Cir.2002). This concept of circular litigation being a bar to further proceedings, although new to Utah, likely has its roots in the mootness doctrine: "A case is deemed moot when the requested judicial relief cannot affect the rights of the litigants." *Burkett v. Schwendiman*, 773 P.2d 42, 44 (Utah 1989).

¶ 15 Here, the facts are similar to those dealt with in *Moore v. Southwestern Electric Power Co.*, 737 F.2d 496 (5th Cir.1984). In *Moore*, an employer was sued for the death of an employee and settled out of court, requiring the plaintiffs to indemnify the employer for any other claims arising out of the incident. *See id.* at 497. The plaintiffs then sued a third-party power company for the same accident. *See id.* Because the power company was entitled to statutory indemnification from the employer and the employer was contractually entitled to indemnification from the plaintiffs, the Fifth Circuit held that the trial court should have ruled in the employer's favor as a matter of law. *See id.* at 501–02. In the instant case, because the Hospital is contractually entitled to indemni-

---

**2.** Neither party challenges the conclusion that the Settlement Agreement and the Annuity Agreement are unambiguous.

fication from Mountain West for the conduct of its employees, and because Mountain West is entitled to indemnification from Ward for any claims arising out of the operation, the same circularity of indemnification that existed in *Moore* is present here. Even if Ward prevails on her ostensible agency claim against the Hospital, the chain of indemnification created by the Settlement Agreement and the Hospital Agreement would prevent any meaningful recovery, and the parties, after much litigation, would be placed "back in the same position in which they began." *Wal–Mart Stores*, 292 F.3d at 594. Thus, the trial court properly decided the case in favor of Mountain West and the Hospital as a matter of law.

## CONCLUSION

¶ 16 The Settlement Agreement and the Annuity Agreement are each valid contracts covering different subjects, created for different purposes. The indemnification clause in the Settlement Agreement is, as the trial court correctly ruled, enforceable against Ward. Because the indemnification clauses in the Settlement Agreement and the Hospital Agreement create a chain of indemnification by which Ward cannot receive any meaningful relief, the trial court correctly ruled that the Hospital and Mountain West were entitled to summary judgment as a matter of law.

¶ 17 We therefore affirm the decision of the trial court.[3]

¶ 18 WE CONCUR: JAMES Z. DAVIS and CAROLYN B. McHUGH, Judges.

---

**3.** The Hospital recently filed a motion asking us to strike Argument B from Ward's Reply Brief and exhibits counsel for Ward submitted during oral argument. We decline to rule on the merits of this motion because our decision renders it moot.