**2017 UT App 218**

## THE UTAH COURT OF APPEALS

DESERT MOUNTAIN GOLD LLC,
Appellee,
*v.*
AMNOR ENERGY CORP.,
Appellant.

Opinion
No. 20160654-CA
Filed November 24, 2017

Fourth District Court, Nephi Department
The Honorable Jennifer A. Brown
No. 140600027

Kathryn J. Steffey and Clayton H. Preece, Attorneys
for Appellant

Allen K. Young and Tyler S. Young, Attorneys
for Appellee

JUDGE KATE A. TOOMEY authored this Opinion, in which JUDGES
GREGORY K. ORME and DIANA HAGEN concurred.

TOOMEY, Judge:

¶1     This case arises out of a dispute over a fully integrated contract between Amnor Energy Corp. and Desert Mountain Gold LLC relating to mining claims on a property located in Juab County, Utah. After Amnor failed to timely make an annual royalty payment required by the contract, Desert Mountain brought an action for breach of contract. Desert Mountain later moved for summary judgment, which the district court granted. Amnor appeals from that order, contending that its failure to perform was excused because of Desert Mountain's earlier alleged breach of the contract's confidentiality clause. Amnor further contends that the district court erred in determining that, under the contract, Amnor's failure to timely pay one of its

annual royalty payments automatically terminated the contract, requiring Amnor to, among other things, quitclaim its interest in the property to Desert Mountain. We affirm.

BACKGROUND

¶2     In July 2011, the parties entered into a fully integrated contract, whereby Amnor acquired certain mining claims from Desert Mountain. Under the contract, Amnor was required to pay Desert Mountain an annual royalty payment of $20,000 "on or before January 30, 2012 and on or before January 30 of each successive year to and including January 30, 2016." In addition, the contract included a confidentiality clause and provisions outlining the dispute resolution process the parties were to follow in the event of a default.

¶3     The first dispute under the contract involved Desert Mountain's alleged breach of the contract's confidentiality clause. In March 2013, Amnor sent Desert Mountain a notice of default, alleging that Desert Mountain breached the confidentiality clause by disclosing the existence of the contract to an independent contractor who had installed a gate on the property. In response, Desert Mountain sent a letter to Amnor disputing the default and explaining that it believed the disclosure was authorized under the contract. Amnor disagreed with Desert Mountain's interpretation of the confidentiality clause and sent a reply letter in April 2013 to that effect. In its reply letter, Amnor explained that, because of Desert Mountain's alleged breach, it would not provide Desert Mountain further "data," as required by the contract, until Desert Mountain cured the breach.[1] Amnor did not attempt to set up a meeting to

_____

1. It is unclear what data Amnor refused to provide, but upon Desert Mountain's request, the terms of the contract required Amnor to provide Desert Mountain with "records documenting

(continued…)

resolve the dispute; rather, it concluded its letter by stating that it was "willing to meet to discuss" if Desert Mountain wished to do so. Despite these communications, the parties continued to perform their respective duties under the contract with the exception of Amnor's refusal to provide Desert Mountain with data relating to the mining claims, and Desert Mountain did nothing to cure its alleged breach.

¶4    More than nine months after the parties' communications regarding Desert Mountain's alleged breach of the confidentiality clause, Amnor failed to make the January 30, 2014 royalty payment. Desert Mountain sent Amnor a notice of default and requested payment. Under the contract, Amnor had fifteen days after receiving the notice to cure the default. Although Amnor eventually sent a check for payment, it failed to do so within the fifteen-day curative window. Desert Mountain refused the payment. Instead, it sent Amnor a notice of termination, requesting that Amnor comply with the contract's termination provision that required Amnor to quitclaim its interest in the property to Desert Mountain. Amnor replied that it would not comply with the termination provisions.

¶5    In June 2014, Desert Mountain filed an action for breach of contract. In its answer, Amnor asserted that Desert Mountain's claim was barred because of Desert Mountain's alleged breach of the contract's confidentiality clause.

---

(…continued)

all costs and expenses Amnor has incurred and which it intends to claim as Expenditures and all Exploration data obtained by Amnor solely from the Property, including but not limited to copies of all maps, drilling logs, analyses, test results, geological, geophysical, and other non-interpretive reports that are based solely on data obtained from the Property."

Accordingly, Amnor asserted a counterclaim for breach of contract. Desert Mountain later moved for partial summary judgment on its claim only.

¶6    Desert Mountain disagreed it had breached the contract's confidentiality clause but argued that, "[e]ven assuming, for the purposes of this Memorandum, Desert Mountain was in default by breaching the Confidentiality Clause," it was entitled to summary judgment because Amnor did not comply with the contract's dispute resolution provisions, which were a prerequisite to enforcement of any remedial provisions Amnor might have had. Thus, Desert Mountain argued, because the contract was fully integrated, Amnor's breach was not excused.

¶7    In its opposing memorandum, Amnor contended it was excused from performing because of Desert Mountain's alleged breach of the confidentiality clause. It also asserted several additional facts, including that Desert Mountain breached the confidentiality clause by disclosing the existence of the contract to an independent contractor. In reply, Desert Mountain admitted, for the purposes of summary judgment only, that it had materially breached the confidentiality clause.

¶8    During oral argument on the motion, Amnor asserted the additional argument that the plain language of the contract allowed for automatic termination only if Amnor failed to make every annual royalty payment under the contract. Thus, Amnor argued, because it missed only one payment, the contract was not automatically terminated.

¶9    The district court granted Desert Mountain's motion in a written ruling. The court first concluded, "Because Amnor did not pursue the remedies the Agreement mandated, the Agreement remained in full force and effect after Desert Mountain's breach." Second, the court concluded that Amnor's failure to make the 2014 royalty payment triggered the contract's automatic termination provision. Amnor filed a timely appeal.

ISSUES AND STANDARD OF REVIEW

¶10    Amnor first contends it was excused from paying the 2014 royalty payment in a timely fashion under the "first breach rule," because of Desert Mountain's earlier alleged breach of the contract's confidentiality clause. Second, Amnor contends the contract could not automatically terminate unless Amnor failed to timely make each of the annual royalty payments.

¶11    Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Utah R. Civ. P. 56(a). We review a district court's "grant of summary judgment, as well as the court's interpretation of contracts upon which the summary judgment was based, for correctness." *Ward v. IHC Health Services, Inc.*, 2007 UT App 362, ¶ 7, 173 P.3d 186.

ANALYSIS

I. First-breach Rule

¶12    Amnor argues the first-breach rule excused it from performing its obligations under the contract and that the district court erred in declining to apply the first-breach rule. Under the first-breach rule, "a party first guilty of a substantial or material breach of contract cannot complain if the other party thereafter refuses to perform." *Cross v. Olsen*, 2013 UT App 135, ¶ 25, 303 P.3d 1030 (citation and internal quotation marks omitted). Further, "[h]e can neither insist on performance by the other party nor maintain an action against the other party for a subsequent failure to perform." *Id.* (citation and internal quotation marks omitted).

¶13    While we recognize both the validity of the first-breach rule and the fact that Desert Mountain admitted that—for the purpose of summary judgment only—it materially breached the

confidentiality clause, we emphasize that "[t]he law of contracts is based on the principle of freedom of contract." *Robinson v. Tripco Inv., Inc.*, 2000 UT App 200, ¶ 40, 21 P.3d 219. Indeed, "courts ordinarily will not invade the province of the parties . . . to determine for themselves what the consequences of a breach of their contracts shall be." *Commercial Real Estate Inv., LC v. Comcast of Utah II, Inc.*, 2012 UT 49, ¶ 29, 285 P.3d 1193 (omission in original) (citation and internal quotation marks omitted). Moreover, when interpreting a contract, "we look to the language of the contract to determine its meaning and the intent of the contracting parties." *McNeil Eng'g & Land Surveying, LLC v. Bennett*, 2011 UT App 423, ¶ 8, 268 P.3d 854 (citation and internal quotation marks omitted). "We also consider each contract provision . . . in relation to all of the others, with a view toward giving effect to all and ignoring none." *Id.* (omission in original) (citation and internal quotation marks omitted).

¶14   In the present case, the contract included a detailed dispute resolution process for the parties to follow in the event that the alleged breaching party disputed its alleged breach. Amnor did not comply with the dispute resolution provisions.

¶15   Section 12.3 of the contract, entitled "Disagreement Over Alleged Default," provides:

> In the event the Party against whom a default is alleged believes that it is not in default, it may give written notice to the other Party within such 15-day or 30-day period, as applicable, setting forth such fact. The Parties shall then follow the procedure set forth in Section 12.4 in attempting to resolve such dispute. In the event that the Parties agree through informal consultation or determine through a judicial decision that there has been a default, this Agreement shall not be terminated if the defaulting Party shall cure the

> default within 30 days following such agreement or determination . . . . If the defaulting Party shall fail to satisfy such determination in the time allowed, then the other Party may terminate this Agreement and may seek such other remedies as it might have in law or in equity.

It is undisputed that Desert Mountain properly disputed its alleged breach of the confidentiality clause. In its letter explaining the ground for its dispute, Desert Mountain stated that its disclosure of the existence of the contract to an independent contractor was permitted under the contract. Once Amnor received the letter, it was required by the contract to "follow the procedure set forth in Section 12.4."

¶16 Section 12.4 provides, in relevant part:

> The parties agree to devote such time, resources, and attention as are needed to attempt to resolve disputes at the earliest time possible . . . . At a minimum, the Parties shall hold one informal meeting within 30 days after notice to attempt to resolve the disputed issue(s).

Section 12.4 further provides that, in the event that the parties cannot resolve the dispute at an informal meeting, the dispute "shall be resolved in a legal proceeding."

¶17 But Amnor did not attempt to hold an informal meeting. Rather, it sent Desert Mountain a letter in which it disagreed with Desert Mountain's interpretation of the contract and stated it was "willing to meet to discuss" the dispute, if Desert Mountain wished to do so. Casually indicating a willingness to meet is much different from attempting to set up a time to meet and discuss the dispute. Amnor asserts that, by its mere statement that it was "willing to meet," it did its part to comply with section 12.4's informal meeting requirement. Amnor further

asserts that, because Desert Mountain did not take Amnor up on what it now characterizes as its "request" to meet, Amnor "was entitled to terminate the agreement or seek such other remedies as it might have in law or equity," such as "application of the First Breach Rule." But before Amnor could terminate the agreement or pursue other remedies, it was required to comply with section 12.4's demand that it promptly seek legal action in the event that an informal meeting proved to be unsuccessful. Amnor does not address this requirement anywhere in its briefing. But even if it had, waiting fourteen months before arguing for the first time that it was excused from performing its obligations under the contract, and invoking the first-breach rule only in response to Desert Mountain's breach of contract action, is hardly sufficient. In any event, at the time Amnor's 2014 royalty payment came due, the dispute remained unresolved because of Amnor's failure to follow the contract's dispute resolution procedures. Therefore, Amnor was not excused from withholding payment.

¶18   Because we must give effect to each provision in the contract, *see McNeil Eng'g*, 2011 UT App 423, ¶ 8, we conclude Amnor was required to comply with the contract's dispute resolution process before it could invoke the first-breach rule. Therefore, the district court did not err in declining to apply the rule.

II. Automatic Termination

¶19   Next, Amnor contends that the district court erred in determining that its failure to timely make the 2014 royalty payment automatically terminated the contract, requiring it to quitclaim its interest in the property to Desert Mountain. We reiterate that, when interpreting a contract, we consider each provision "in relation to all of the others, with a view toward giving effect to all and ignoring none." *McNeil Eng'g & Land*

*Surveying, LLC v. Bennett*, 2011 UT App 423, ¶ 8, 268 P.3d 854 (citation and internal quotation marks omitted).

¶20     Sections 3.2 and 8.1(b) of the contract relate to Amnor's obligation to make annual royalty payments, and our interpretation of those sections is critical to resolving this issue. Section 3.2 provides the following:

> *In order to keep this Agreement in effect and retain the Property*, Amnor shall pay to Desert Mountain, as Advance Royalty Payments, the sum of $20,000 on or before January 30, 2012 and on or before January 30 of each successive year to and including January 30, 2016 provided that this Agreement is in effect on January 30 of the relevant year, for total aggregate Advance Royalty Payments of $100,000. Amnor may, in its discretion, pay Advance Royalty Payments at a rate faster than required in the preceding sentence.

(Emphasis added.) Section 8.1(b) addresses termination and provides that the contract

> will automatically terminate upon the failure by Amnor to pay all of the Advance Royalty Payments or incur all of the Expenditures in a timely manner (subject to Amnor's right to cure any such failures as provided in this Agreement). If this Agreement terminates pursuant to this Section 8.1(b), except for the provisions of 8.1(c), this Agreement shall be of no further force and effect.

Under Amnor's interpretation, the contract "would only terminate automatically if Amnor failed to pay every payment due." But that interpretation fails to give effect to section 3.2. *See McNeil Eng'g*, 2011 UT App 423, ¶ 8. Section 3.2 identifies the dates by which Amnor was required to make each of its annual

royalty payments and states that, to keep the contract in effect and retain the property, Amnor must timely make the payments on or before January 30 of each year.

¶21    When reading sections 3.2 and 8.1(b) together, it is clear that Amnor's failure to make the 2014 royalty payment in a timely fashion and its failure to timely cure its default caused the contract to automatically terminate, requiring Amnor to comply with section 8.1(c)'s termination procedures, including the quitclaim requirement.

CONCLUSION

¶22    We conclude that the district court did not err in declining to apply the first-breach rule where Amnor failed to comply with the contract's dispute resolution provisions. We also conclude that the district court did not err in determining that, under the contract, Amnor's failure to make the 2014 royalty payment and to timely cure its default automatically terminated the contract. Therefore, summary judgment was appropriate.

¶23    Affirmed.

_____