2005 UT App 495

**EXPRESS RECOVERY SERVICES, INC., a debt collection agency, Plaintiff and Appellee,**

v.

**Scott RICE dba MTI, Defendant and Appellant.**

**No. 20040871–CA.**

Court of Appeals of Utah.

Nov. 17, 2005.

Blake S. Atkin, Salt Lake City, for Appellant.

Edwin B. Parry and Samuel S. McHenry, West Valley City, for Appellee.

Before Judges BENCH, GREENWOOD, and ORME.

MEMORANDUM DECISION

ORME, Judge:

¶ 1 Defendant Scott Rice claims the trial court erred in concluding that he is personally liable on a contract he signed in his capacity as an officer of Memory Technologies, Inc. (MTI). The facts here are not in dispute, and we review the trial court's decision under a correction of error standard. *See Zions First Nat'l Bank v. National Am. Title Ins. Co.*, 749 P.2d 651, 653 (Utah 1988) ("Questions of contract interpretation not requiring resort to extrinsic evidence are matters of law, and on such questions we accord the trial court's interpretation no presumption of correctness.").

¶ 2 The existence of only one signature on the contract supports the interpretation that Rice was signing solely in a representative capacity. *See* 18B Am.Jur.2d *Corporations* § 1593 (2004) ("If individual responsibility is demanded, the nearly universal practice in the commercial world is that the corporate officer signs twice, once as an officer and again as an individual."). *Accord Mason Tenders Dist. Council Welfare Fund v. Thomsen Constr. Co.*, 301 F.3d 50, 54 (2d Cir.2002) (per curiam). We need not, however, decide the case on this basis, as it is unnecessary given our analysis of Paragraph 11 of the contract.

¶ 3 Paragraph 11 reads in full:

> If [MTI] sells or discontinues business before or after publication of the Directory, no payment or amount due under the terms of this contract will be waived thereby. The signer of the contract guarantees payment of the amount due either directly, or through escrow if business is sold. Payment or amount due may be assumed by the New Owner, if name of business and phone number remain the same.

It is unclear from the wording of the second sentence of the paragraph whether the "guaranty" applied only upon sale of the corporation, or whether it also applied if MTI "discontinue[d] business." We note that if there are any ambiguities in this contract, however, they should be construed against Express Recovery Services, as successor to the drafter.[1] *See* Restatement (Second) of Contracts § 206 (1981). But even assuming that Paragraph 11's guaranty provision also applied in the event the business was discontinued, we still determine that Rice is not personally liable because that triggering condition never occurred. At best, the guaranty is triggered only when the corporation "sells or discontinues business"—and neither event happened.

---

1. When there is an ambiguity in contract language, we turn first to extrinsic evidence in order to determine the intent of the parties. But in the absence of such extrinsic evidence, which is commonly lacking in the non-negotiated terms of form contracts, we construe the lingering ambiguities against the drafter as a last resort. *See Wilburn v. Interstate Elec.*, 748 P.2d 582, 585 & n. 2 (Utah Ct.App.1988), *cert. dismissed*, 774 P.2d 1149 (Utah 1989).

¶ 4 It is true that the corporation was involuntarily dissolved at the time the lawsuit was commenced, but involuntary dissolution is not equivalent to corporate nonexistence, much less to the discontinuation of business. Consequently, the district court erred in its determination that because of the involuntary dissolution status, "MTI did not exist as a legal entity" at the time the suit was commenced.

■■■ ¶ 5 The Utah Code provides that an administratively dissolved corporation "continues its corporate existence," although it is limited in the "business" it is authorized to conduct. Utah Code Ann. § 16–10a–1421(3)(a) (2001). The Code also provides that after such a corporation is properly reinstated, any "business conducted by the corporation during a period of administrative dissolution is unaffected by the dissolution." *Id.* § 16–10a–1421(3)(b). Thus, by the very terms of the statute, an administratively dissolved corporation remains in "existence" and its continued "business" may ultimately be unaffected by an involuntary dissolution. While the corporation's officers may not be shielded from liability for some business conducted after an administrative dissolution, *see Murphy v. Crosland,* 886 P.2d 74, 78 (Utah Ct.App.1994) ("[B]y continuation of the business without contemplation of liquidation, the directors and officers are held personally responsible for contract and tort liability incurred during the period following dissolution."), that fact does not necessarily mean that the corporation has ceased its existence or discontinued its business. Indeed, the administrative dissolution may be subsequently revoked through reinstatement. *See* Utah Code Ann. § 16–10a–1422(3) (2001). Most importantly, such reinstatement "relates back to the effective date of the admin-

istrative dissolution," making any business transacted during the period of dissolution valid and enforceable, thus allowing the corporation to "carry on its business ... as if the administrative dissolution had never occurred." *Id.* § 16–10a–1422(4).

¶ 6 Furthermore, it appears that the conditional "guaranty" at issue here was to apply only in the event the corporation was sold or actually ceased to do business. Administrative dissolution, however, does not have the same effect as selling or discontinuing the business. And the Utah Code specifically provides that the dissolution does not "prevent commencement of a proceeding by or against the corporation in its corporate name." *Id.* § 16–10a–1405(2)(e). The alleged guaranty by Rice was conditional, and MTI's temporary administrative dissolution simply does not meet the plain language of the condition, which requires, at most, either the sale of the corporation or the cessation of its business activities. *Cf. Smith v. Bowman,* 32 Utah 33, 88 P. 687, 688 (1907) ("[I]t is well to bear in mind that sureties are favorites of the law, and that their liability is not to be extended by implication beyond the terms of their contract.").

¶ 7 Accordingly, we vacate the judgment of the district court.

¶ 8 WE CONCUR: RUSSELL W. BENCH, Associate Presiding Judge, PAMELA T. GREENWOOD, Judge.