2006 UT App 400

### DBL DISTRIBUTING, INC., a corporation, Plaintiff and Appellant,

v.

### 1 CACHE, L.L.C.; Gary R. Bracken; and Aaron Bracken, Defendants and Appellees.

No. 20050181–CA.

Court of Appeals of Utah.

Oct. 5, 2006.

---

Gregory M. Constantino, West Jordan, for Appellant.

Marlin J. Grant, Olson & Hoggan, Logan, for Appellees.

Before Judges BILLINGS, ORME, and THORNE.

## OPINION

THORNE, Judge:

¶ 1 DBL Distributing, Inc. (DBL) appeals from the trial court's order dismissing its action against 1 Cache, L.L.C. (1 Cache), Gary R. Bracken, and Aaron Bracken. We reverse and remand.

## BACKGROUND

¶ 2 On January 29, 1999, 1 Cache applied for a line of credit with DBL. Gary Bracken, the president and a shareholder of 1 Cache, completed and signed the credit application on 1 Cache's behalf. The credit application included the following guarantee clause: "The undersigned agrees to unconditionally guarantee payment of all sums owed pursuant to this Agreement.... This is intended to be and is a continuing guarantee and shall not be revoked except by written notice to creditor." The application contained a single signature line captioned "By:" and under which was printed "Owner/Corporate Officer/Partner/Principal." Bracken's signature on the application consisted solely of his name, without any indication of corporate title or other limiting language. In accordance with this credit application, DBL delivered goods to 1 Cache and submitted invoices to 1 Cache for the products ordered.

¶ 3 Near the beginning of 2001, DBL updated its credit application form. The updated form modified the guarantee language,

stating: "The undersigned agrees to *personally* guarantee payment of all sums owed pursuant to this Agreement.... This is intended to be and is a continuing guarantee and shall not be revoked except by written notice to creditor." (Emphasis added.) The updated application also altered the signature block section to include separate lines for the applicant's firm name, signature, and title. DBL apparently sought to have each of its existing customers complete an updated application.

¶ 4 On April 24, 2001, Gary Bracken completed and signed an updated application on behalf of 1 Cache. This time, he added the hand-written notation "president, only in his representative capacity" next to his signature in the space for his title.

¶ 5 On July 18, 2001, Aaron Bracken, an officer of 1 Cache, signed an identical updated credit application. The body of the form was not filled out. Aaron Bracken signed and dated the blank application, indicated the firm name as 1 Cache, and stated his title as vice-president.

¶ 6 1 Cache filed for chapter 7 bankruptcy on August 26, 2002. Two years later, on August 4, 2004, DBL filed a complaint against 1 Cache and Gary Bracken, asserting in part that Bracken was personally liable for outstanding debt incurred by 1 Cache. Bracken filed a motion to dismiss, and DBL sought summary judgment. DBL also sought to amend its complaint to assert personal liability against Aaron Bracken.

¶ 7 The trial court denied DBL's motion for summary judgment and granted Bracken's motion to dismiss as to 1 Cache, Gary Bracken, and Aaron Bracken.[1] The trial court found that DBL's action against 1 Cache was barred by 1 Cache's bankruptcy, and that none of the credit applications created personal liability for Gary or Aaron Bracken on a personal guarantee theory. DBL appeals.

1. The trial court never formally ruled on DBL's motion to amend its complaint to add Aaron Bracken as a defendant. For purposes of this opinion, we will treat the trial court's dismissal of DBL's action against Aaron Bracken as an implied grant of DBL's motion to amend, at least to the extent that the amended complaint added Aaron Bracken as a party.

## ISSUES AND STANDARDS OF REVIEW

¶ 8 DBL argues that the trial court erred in dismissing its action against Gary and Aaron Bracken.[2] " 'Review of a grant of a motion to dismiss presents questions of law that we review for correctness, giving no deference to the decision of the [trial] court.' " *Sullivan v. Sullivan,* 2004 UT App 485, ¶ 5, 105 P.3d 963 (alteration in original) (quoting *Foutz v. City of S. Jordan,* 2004 UT 75, ¶ 8, 100 P.3d 1171).

¶ 9 DBL also argues that the trial court erred in failing to grant its motion for summary judgment. To the extent that the relevant facts are undisputed, "a district court's decision to deny ... summary judgment 'presents only questions of law,' which are reviewed for correctness." *Hansen v. Eyre,* 2005 UT 29, ¶ 8, 116 P.3d 290 (quoting *Fericks v. Lucy Ann Soffe Trust,* 2004 UT 85, ¶ 10, 100 P.3d 1200).

## ANALYSIS

¶ 10 We determine that the trial court erred when it dismissed DBL's claims against Gary and Aaron Bracken. We decline, however, to disturb the trial court's denial of DBL's motion for summary judgment on the state of the record and briefing before us.

### I. The Trial Court Erred in Dismissing DBL's Claims Against the Brackens

¶ 11 DBL's claims against the Brackens allege that both Gary and Aaron Bracken accepted personal liability for the debts of 1 Cache pursuant to various credit applications that they signed on behalf of 1 Cache. "We review the district court's grant of a motion to dismiss for correctness, accepting as true the factual allegations of the complaint and drawing all inferences in the plaintiff's fa-

2. DBL does not appeal from the dismissal of its case against 1 Cache itself, and we do not address that aspect of the trial court's dismissal order.

vor." *Hunter v. Sunrise Title Co.*, 2004 UT 1, ¶ 6, 84 P.3d 1163.

¶ 12 DBL's complaint alleges, and it appears to be undisputed, that both Gary and Aaron Bracken signed documents containing language of personal guarantee. The 1999 credit application signed by Gary Bracken stated that "[t]he undersigned agrees to unconditionally guarantee payment of all sums owed pursuant to this Agreement." In 2001, both Gary and Aaron Bracken signed credit applications stating that "[t]he undersigned agrees to personally guarantee payment of all sums owed pursuant to this Agreement." Despite this guarantee language, the Brackens argue that they signed the various documents solely in their capacity as corporate officers, and not as individuals. They rely on the general proposition that a corporate signatory is not individually liable on an instrument that he signs in a representative capacity. *See, e.g., Howells, Inc. v. Nelson,* 565 P.2d 1147, 1149 (Utah 1977) (holding director not liable on corporate check when signed in corporate capacity).

¶ 13 To relieve an individual signer from liability, the signer's corporate capacity must be clear from the form of signature. *See Boise Cascade Corp. v. Stonewood Dev. Corp.*, 655 P.2d 668, 668 n. 1 (Utah 1982) (per curiam) ("[W]here it is not clear that a corporate officer signs a contract in a representative capacity, he is personally liable."). Individuals who fail to limit their signatures to their corporate capacity have consistently been held to be directly liable on corporate instruments. *See Bushnell Real Estate, Inc. v. Nielson,* 672 P.2d 746, 751–52 (Utah 1983) (holding corporate officers liable on promissory note where they failed to signify their corporate capacity in their signatures); *Anderson v. Gardner,* 647 P.2d 3, 4–5 (Utah 1982) (holding that where it is not clear that a corporate officer signs a contract in a representative capacity, he is personally liable); *Sterling Press v. Pettit,* 580 P.2d 599, 600–01 (Utah 1978) (holding individuals liable on purported corporate check signed without corporate titles and using unregistered corporate name); *Starley v. Deseret Foods Corp.,* 93 Utah 577, 74 P.2d 1221, 1223–25 (1938) (affirming action on note against cor-

porate secretary who signed corporate promissory note without adding word "Secretary" next to signature).

¶ 14 This line of cases alone is sufficient to determine that the trial court erred in dismissing DBL's claim against Gary Bracken, as he signed the 1999 application with a bare signature that did not indicate his corporate capacity. Bracken argues that the preprinted language of the form—"By:" preceding the signature line and "Owner/Corporate Officer/Partner/Principal" underneath it—demonstrates that he signed the document as a corporate officer for 1 Cache and not as an individual. At most, these circumstances might create a fact question that would preclude summary judgment against Bracken on this issue. However, that same fact question must be resolved in favor of DBL for purposes of reviewing Bracken's motion to dismiss.

¶ 15 Gary and Aaron Bracken's 2001 signatures on the updated credit applications provide additional potential sources of liability despite those signatures' indication of corporate capacity. The 2001 documents present a conflict between the substance of the documents, each of which specifically indicates personal liability against whoever signs it, and the signatures themselves, which suggest only corporate liability. Several Utah cases address this very conflict and hold that clear language of personal guarantee in a document can result in personal liability despite a corporate signature.

¶ 16 In *Appliance & Heating Supply, Inc. v. Telaroli,* 682 P.2d 867 (Utah 1984) (per curiam), a credit agreement between two corporations contained language that the "undersigned ... assumes personal responsibility for the payment of said corporation's account, and guarantees in full that said account will be promptly paid." *Id.* at 868 (emphasis omitted). The defendant signed the agreement on behalf of the borrower corporation, adding the word "president" after his signature. *See id.* The supreme court flatly rejected the defendant's argument that his signature as president absolved him of personal liability on the guarantee, stating that the argument "flies in the

teeth of the language of . . . the agreement." *Id.*

¶ 17 In *Boise Cascade Corp. v. Stonewood Development Corp.*, 655 P.2d 668 (Utah 1982) (per curiam), Stonewood's corporate officers signed a guarantee document. *See id.* at 668. The document stated that the "undersigned unconditionally promise and guarantee" payment of corporate debts to Boise Cascade. *Id.* at 669. Each of the officers indicated his title next to his signature. Stonewood's vice-president attempted to avoid personal liability on the guarantee by asserting that he signed solely in his representative capacity. In rejecting this argument, the supreme court stated: "The 'V–Pres.' following appellant's signature on the agreement is a matter of description (descriptio personae), not of capacity to bind a different principal obligor; otherwise the liability would result in an absurdity, i.e., that the principal obligor also was the guarantor of his own obligation." *Id.* (footnote omitted).

¶ 18 Both of the 2001 credit applications signed by the Brackens contain unambiguous language of personal guarantee: "The undersigned agrees to personally guarantee payment of all sums owed." Thus, despite the corporate form of the signatures and other aspects of the documents that suggest only corporate liability, dismissal of DBL's claims against both Gary and Aaron Bracken was inappropriate. *See Telaroli*, 682 P.2d at 868; *Boise Cascade*, 655 P.2d at 668; *see also Utah Valley Bank v. Tanner*, 636 P.2d 1060, 1062 (Utah 1981) (holding co-maker of promissory note stating that the "undersigned" would pay was deemed liable despite argument that he signed only as corporate representative).

## II. DBL's Motion for Summary Judgment

■ ¶ 19 DBL also asks us to reverse the trial court's denial of its motion for summary judgment and to grant summary judgment in DBL's favor. We decline to do so on the state of the record and briefing before us.

¶ 20 When the relevant facts are undisputed, "a district court's decision to deny . . . summary judgment 'presents only questions of law,' which are reviewed for correctness." *Hansen v. Eyre*, 2005 UT 29, ¶ 8, 116 P.3d 290 (quoting *Fericks v. Lucy Ann Soffe Trust*, 2004 UT 85, ¶ 10, 100 P.3d 1200). This case, which largely presents questions of contractual interpretation, would ordinarily present circumstances where we could determine a correct result as a matter of law. However, we decline to do so because the parties have not briefed the determining issue.

¶ 21 If DBL is entitled to summary judgment, it would be under cases such as *Appliance & Heating Supply, Inc. v. Telaroli*, 682 P.2d 867 (Utah 1984) (per curiam), and *Boise Cascade Corp. v. Stonewood Development Corp.*, 655 P.2d 668 (Utah 1982) (per curiam), that address conflicts between language of personal guarantee in the body of a contract and a signature that purports to limit the signer's liability to his or her corporate capacity.[3] DBL did not raise or argue this line of cases before the trial court or this court. Thus, we have before us no reasoned analysis from DBL as to why summary judgment is appropriate under these cases, and no responsive briefing from the Brackens arguing the opposite result. Instead, both parties simply focus on the portions of the contracts that they assert are controlling—DBL on the language of personal guarantee, and the Brackens on the form of the contracts and the details of their signatures.

¶ 22 We find the key issue here—resolution of the conflict between the body and the signature on the disputed contracts—to be inadequately briefed, and we decline to address it. *See Smith v. Smith*, 1999 UT App 370, ¶ 8, 995 P.2d 14 ("An issue is inadequately briefed when 'the overall analysis of the issue is so lacking as to shift the burden

---

**3.** *See also Express Recovery Servs., Inc. v. Rice*, 2005 UT App 495, ¶¶ 1–2, 125 P.3d 108 (addressing personal guarantee contained in corporate document); *cf. Mason Tenders Dist. Council Welfare Fund v. Thomsen Constr. Co.*, 301 F.3d 50, 53–54 (2d Cir.2002) (per curiam) (applying New York's "clear and explicit evidence" standard for imposing personal guarantee liability in collective bargaining agreement); 18B Am. Jur.2d *Corporations* § 1593 (2004) ("If individual responsibility is demanded, the nearly universal practice in the commercial world is that the corporate officer signs twice, once as an officer and again as an individual.").

483

of research and argument to the reviewing court.'" (citation omitted)). Accordingly, we decline to order summary judgment in favor of DBL at this time.

¶ 23 If DBL—or, for that matter, the Brackens—continues to believe that summary judgment is appropriate as to one or more of the disputed contracts, it is not precluded from filing a renewed motion for summary judgment applying the applicable caselaw. DBL has identified no error, however, in the trial court's denial of DBL's actual motion for summary judgment presented below.

## CONCLUSION

¶ 24 The guarantee language contained in Gary Bracken's 1999 credit application on behalf of 1 Cache, and his failure to limit his 1999 signature to his corporate capacity, create the possibility of personal liability as to Gary Bracken and preclude dismissal of DBL's claim against him. Aaron Bracken's signature on a document containing the words "[t]he undersigned agrees to personally guarantee payment of all sums owed" similarly precludes dismissal of DBL's claim against him despite his signature as 1 Cache's vice-president. DBL's briefing is inadequate to allow us to determine that the trial court erred in denying summary judgment to DBL. Accordingly, we reverse the trial court's order below and remand this matter for further proceedings consistent with this opinion.

¶ 25 WE CONCUR: JUDITH M. BILLINGS and GREGORY K. ORME, Judges.