2022 UT App 66

# THE UTAH COURT OF APPEALS

LEANN WILSON AND MARK WILSON,
Appellees,
*v.*
NANCY BOLDT,
Appellant.

Opinion
No. 20200762-CA
Filed May 19, 2022

Fourth District Court, Provo Department
The Honorable Christine S. Johnson
No. 190401608

Douglas P. Farr, Katherine R. Nichols, Dillon P.
Olson, Ben T. Welch, and Annika L. Jones, Attorneys
for Appellant

Joseph C. Rust, Attorney for Appellees

JUDGE JILL M. POHLMAN authored this Opinion, in which JUDGES
MICHELE M. CHRISTIANSEN FORSTER and DAVID N. MORTENSEN
concurred.

POHLMAN, Judge:

¶1   Nancy Boldt signed a commercial lease agreement for a property managed by LeAnn and Mark Wilson. At the time the lease was signed, Boldt served as the executive director of a nonprofit organization. When the rent went unpaid, the Wilsons brought an action seeking damages. On summary judgment, the district court rejected Boldt's contention that she signed the lease only as a representative of the nonprofit, and it determined that Boldt was personally liable for any amounts owing under the lease. Boldt now appeals, and we affirm.

BACKGROUND[1]

¶2     Mark[2] owns a commercial property (the Property) in American Fork, Utah, which he manages together with LeAnn. In July 2016, LeAnn signed a three-year lease (the Lease) for the Property. Boldt is the other signer of the Lease. At the time, Boldt was the executive director of a nonprofit organization, Canary Garden Center for Grieving Children and Families (Canary Garden).

¶3     In the introductory paragraph of the Lease, the named lessor is identified in the space provided as "Mark or LeAnn Wilson." The named lessee is identified as "Nancy Boldt/Canary Garden Center for Grieving." At the bottom of the document, the Lease provides signature lines next to pre-printed terms "Lessor" and "Lessee." Those signature lines are filled out with hand-printed names followed by signatures as follows:

> Lessor: LeAnn or Mark Wilson/ *LeAnn Wilson*
>
> Lessee: Nancy Boldt/ *Nancy Boldt*

On the same day the Lease was signed, a Rental/Credit Application (the Application) was executed. The named applicant is "Nancy Boldt/Canary Garden Center for Grieving Children & Families." Boldt's personal information, including her address and email, is included in the Application. But the banking

---

1. "In reviewing a district court's grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party and recite the facts accordingly." *Ockey v. Club Jam*, 2014 UT App 126, ¶ 2 n.2, 328 P.3d 880 (cleaned up).

2. Because Mark and LeAnn Wilson share the same last name, we refer to them by their first names, with no disrespect intended by the apparent informality.

information, which is purported to be Canary Garden's, is crossed out.

¶4    It was understood that Canary Garden would occupy the Property. Further, all payments received under the Lease were paid from Canary Garden's bank account.

¶5    During Canary Garden's occupation of the Property, American Fork City brought a misdemeanor charge against Boldt for operating without a business license. The charge was ultimately dismissed, but during its pendency Canary Garden was unable to raise funds. Canary Garden then had difficulty making timely rent payments to the Wilsons.

¶6    Canary Garden expired as a nonprofit corporation in 2015 for failure to register, meaning that it was not properly registered at the time the Lease was signed. It re-registered in 2018 and was given a new registration number.

¶7    The Wilsons eventually served a three-day notice to vacate after the nonpayment of rent. The Property was vacated in August 2019. The Wilsons then brought the current action against Boldt and Canary Garden, seeking money damages.

¶8    The Wilsons moved for partial summary judgment, arguing that the district court should conclude as a matter of law that Boldt, in her individual capacity, breached the Lease and that the Wilsons were entitled to a judgment against her. They argued that because Boldt signed the Lease without indicating that she was acting for a principal, she was personally liable on the Lease. They also asserted that given Canary Garden's lapsed registration, Canary Garden legally could not have entered the Lease in July 2016.

¶9    Boldt opposed summary judgment by arguing that the plain language of the Lease unambiguously established that Canary Garden—and not Boldt personally—was party to the

Lease. According to Boldt, "Canary Garden was listed as the Lessee" and is therefore solely liable under it. Boldt alternatively asserted, based on the Wilsons' contrary position, that the Lease was "ambiguous at the very least" and that parol evidence would confirm that the Wilsons entered the Lease with Canary Garden.

¶10 The district court agreed with the Wilsons that when Boldt signed the Lease, she did so individually and was thereby personally liable. The court reasoned that the signature line on the Lease does not refer to Canary Garden; instead, only Boldt's printed name is included where the Lease provides a signature line for the lessee. Boldt's signature then appears next to her printed name, "without any suggestion that she is signing as an agent or representative of any company." The court observed that the only reference to Canary Garden is in the Lease's introductory paragraph in the space provided to fill in the name of the lessee. And in that space, Boldt's name also appears there, "in equal footing with Canary Garden." But the lone reference to Canary Garden does not create any ambiguity. The court thus concluded that while Canary Garden and Boldt are both named on the Lease, "Boldt is the only party who signed, and she signed as an individual." Accordingly, the court saw no reason to depart from "the long-held rule that 'individuals who fail to limit their signatures to their corporate capacity [are] . . . held to be directly liable on corporate instruments.'" (Cleaned up) (quoting *DBL Distrib., Inc. v. 1 Cache, LLC*, 2006 UT App 400, ¶ 13, 147 P.3d 478).

¶11 After the district court issued its ruling and order on the Wilsons' motion for partial summary judgment, the parties stipulated to the entry of judgment against Boldt.[3] The court therefore entered judgment against Boldt in the amount of

---

3. The parties stipulated to several terms relevant to the enforcement of the judgment and expressly agreed that by entering the stipulation, Boldt was not waiving her right to appeal the district court's decision.

$60,000, which included all incurred costs, expenses, and attorney fees. The judgment provided that it could "be augmented by the reasonable costs and attorney fees incurred in the subsequent collection of said judgment." Boldt now appeals.

## ISSUE AND STANDARD OF REVIEW

¶12    Boldt challenges the district court's grant of summary judgment to the Wilsons, arguing that the court erred in holding her personally liable under the Lease. Summary judgment is appropriate "if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Utah R. Civ. P. 56(a). "We review a district court's grant of summary judgment, as well as the court's interpretation of contracts upon which the summary judgment was based, for correctness." *Desert Mountain Gold LLC v. Amnor Energy Corp.*, 2017 UT App 218, ¶ 11, 409 P.3d 74 (cleaned up).

## ANALYSIS

¶13    Boldt contends that the district court erroneously concluded as a matter of law that she signed the Lease in her individual capacity. Pointing to the identification of the lessee as "Nancy Boldt/Canary Garden Center for Grieving" in the Lease's introductory paragraph, Boldt argues that "the plain language [of the Lease] affirmatively establishes that Canary Garden was the Lessee, and Ms. Boldt was merely acting as agent to that principal." In Boldt's view, the Lease identifies Canary Garden as the lessee, and the Lease's signature line does not "clearly indicate Ms. Boldt assumed liability personally." (Cleaned up.) Additionally, Boldt argues on appeal that the district court "improperly refused to consider extrinsic evidence."

¶14    The district court correctly recognized that under Utah law, "[i]ndividuals who fail to limit their signatures to their

corporate capacity have consistently been held to be directly liable on corporate instruments." *DBL Distrib., Inc. v. 1 Cache, LLC*, 2006 UT App 400, ¶ 13, 147 P.3d 478 (collecting cases).[4] Thus, "[t]o relieve an individual signer from liability, the signer's corporate capacity must be clear from the form of signature." *Id.*; *see also Boise Cascade Corp. v. Stonewood Dev. Corp.*, 655 P.2d 668, 668 n.1 (Utah 1982) (per curiam) ("[W]here it is not clear that a corporate officer signs a contract in a representative capacity, he is personally liable.").

¶15    The Utah Supreme Court's decision in *Anderson v. Gardner*, 647 P.2d 3 (Utah 1982), is instructive. Indeed, the facts of that case are strikingly similar to those of the case at hand. There, the defendant, Jay Gardner, was the general manager of radio station KMOR. *Id.* at 3. Gardner signed two contracts with a performer, and when two checks were not honored for payment, the performer sued Gardner for the unpaid balance. *Id.* at 3–4. The printed contracts identified the parties as "the undersigned employer" and "musicians." *Id.* at 4 (cleaned up). "The 'employer' was identified by name only on the signature line," which appeared as follows:

Mr. Jay Gardner-KMOR RADIO

Employer's Name

s/ Jay Gardner

Signature of Employer

---

4. Boldt suggests that *DBL Distributing, Inc. v. 1 Cache, LLC*, 2006 UT App 400, 147 P.3d 478, is distinguishable based on its procedural posture and because it involved documents containing personal guarantees. *See id.* ¶¶ 11–12, 18. We acknowledge these differences, but they do not detract from *DBL Distributing*'s accurate statement of the law. *See id.* ¶ 13.

*Id.* The supreme court determined that the contracts were signed by Gardner personally. *Id.* It acknowledged that KMOR RADIO followed Gardner's name on the line marked "Employer's name," and that "[c]onsidered in isolation," those words could "signify[] an entity that was co-obligor or sole obligor" or they could "merely identify[] [Gardner's] affiliation or location." *Id.* The court also noted the unchallenged finding that KMOR RADIO "was not a corporation or a registered dba." *Id.*

¶16    "[T]he key fact," however, was that in context the "signature of employer" was "that of [Gardner] alone, without any indication that he [was] signing for any other party or in any other capacity than for himself." *Id.* (cleaned up). The *Anderson* court thus concluded that "[Gardner's] personal liability follow[ed] from that unqualified signature." *Id.*

¶17    We conclude that the district court got this case right. Despite the Lease's introductory paragraph identifying "Nancy Boldt/Canary Garden Center for Grieving" as lessee, the key fact here is that Boldt is identified as the sole lessee on the signature line of the Lease, and "[h]er signature appears next to her printed name, without any suggestion that she is signing as an agent or representative of any company." Like Gardner in *Anderson*, Boldt's name and signature appear "without any indication that [she was] signing for any other party or in any other capacity than for [herself]." *See* 647 P.2d at 4. And because Boldt's representative capacity (as Canary Garden's executive director) was inconsistent with the Lease's identification of Boldt as the lessee and was *not* otherwise apparent from the form of signature, Boldt is personally liable under the Lease. *See id.*; *see also DBL Distrib.*, 2006 UT App 400, ¶ 13.

¶18    The district court also correctly concluded that the Lease's introductory paragraph does not create any ambiguity. *See Anderson*, 647 P.2d at 4. *See generally Central Fla. Invs., Inc. v. Parkwest Assocs.*, 2002 UT 3, ¶ 12, 40 P.3d 599 ("An ambiguity

exists where the language is reasonably capable of being understood in more than one sense." (cleaned up)). Both Boldt and Canary Garden are identified together in the introductory paragraph, with a slash between their names. Considered in isolation, those words could suggest that Boldt *and* Canary Garden are the lessee; or they could suggest that the lessee was Boldt doing business as Canary Garden. Yet the introductory paragraph is not necessarily inconsistent with the signature line,[5] and it is dispositive for our purposes that Boldt is the only one who signed the Lease and that she did so as the identified lessee without qualification. *See Anderson*, 647 P.2d at 4; *see also DBL Distrib.*, 2006 UT App 400, ¶ 13.[6]

---

5. Even if we were to consider the Application, in which the named applicant is "Nancy Boldt/Canary Garden Center for Grieving Children & Families," the Application likewise is not necessarily inconsistent with the signature line.

6. Citing *Express Recovery Services, Inc. v. Rice*, 2005 UT App 495, 125 P.3d 108, Boldt asserts that the "existence of only one signature on the contract supports the interpretation that [an individual] was signing solely in a representative capacity." *Id.* ¶ 2. But the description of the contract at issue in that case is limited, making it impossible to draw a valid comparison. And the case cited by *Express Recovery* rejected individual liability where the entity was identified in the signature line as the party to the contract and the corporate representative expressly signed as the entity's agent. *See Mason Tenders Dist. Council Welfare Fund v. Thomsen Constr. Co.*, 301 F.3d 50, 52–54 (2d Cir. 2002) (per curiam), *cited in Express Recovery*, 2005 UT App 495, ¶ 2. That situation is different from what we have here, where Boldt alone is identified in the signature line as the lessee and where nothing indicates that she signed the Lease in a representative capacity. In any event, the cited portion of *Express Recovery* was merely dicta

(continued…)

¶19 Boldt resists these conclusions by suggesting that *Anderson* is distinguishable because "Canary Garden was defined and named as a party" in the Lease more clearly than was KMOR RADIO. We disagree. KMOR RADIO was named in the contracts there just as much as Canary Garden was here. *See Anderson*, 647 P.2d at 3–4. Boldt also attempts to distinguish *Anderson* based on the ground that, unlike KMOR RADIO, Canary Garden "is an existing corporation." Although the *Anderson* court noted that KMOR RADIO was "not a corporation or a registered dba," its decision was driven by the fact that the unqualified signature was Gardner's alone. *See id.* at 4. The *Anderson* court concluded that the contracts there had "no ambiguity." *Id.* Similarly here, regardless of whether Canary Garden was an existing corporation, Boldt's signature, which is alone and "unqualified" at the end of the Lease, leads us to conclude that Boldt is personally liable under the Lease.[7] *See id.* The district court correctly granted summary judgment to the Wilsons on this issue.

¶20 Next, Boldt contends that "the district court improperly refused to consider extrinsic evidence, which demonstrated the presence of ambiguity regarding the intent of the parties." She

---

because this court did "not . . . decide the case on [that] basis." *See Express Recovery*, 2005 UT App 495, ¶ 2. *See generally Ortega v. Ridgewood Estates LLC*, 2016 UT App 131, ¶ 14 n.4, 379 P.3d 18 (explaining that obiter dicta refers to "judicial statements that are unnecessary to the resolution of the case" and includes "a remark or expression of opinion that the court uttered as an aside" (cleaned up)); *Greyhound Lines, Inc. v. Utah Transit Auth.*, 2020 UT App 144, ¶¶ 50–51, 477 P.3d 472 (same).

7. We need not and do not resolve any questions surrounding Canary Garden's legal status or its ability to enter contracts. But we note that our reasoning should not be taken to support the proposition that personal liability can be avoided by signing a contract as a representative of an entity not in good standing.

further contends that a jury should have been called upon to "weigh the evidence concerning the parties' intent and to resolve that factual dispute." We conclude that Boldt did not preserve this issue for appeal.

¶21　"When a party fails to raise and argue an issue in the trial court, it has failed to preserve the issue, and an appellate court will not typically reach that issue absent a valid exception to preservation." *Warrick v. Property Reserve Inc.*, 2018 UT App 197, ¶ 12, 437 P.3d 439 (cleaned up). An issue is preserved "when it has been presented to the district court in such a way that the court has an opportunity to rule on it." *Id.* (cleaned up). "To provide the court with this opportunity, the issue must be specifically raised by the party asserting error, in a timely manner, and must be supported by evidence and relevant legal authority." *Id.* (cleaned up).

¶22　Boldt did not ask the district court to consider extrinsic evidence for the purpose of deciding *whether* the Lease was ambiguous. To the contrary, Boldt argued to the court—as an alternative to her primary argument—that "when an ambiguity exists," *then* it "should look to parol evidence" to resolve that ambiguity. (Cleaned up.) Thus, Boldt did not raise the same issue before the district court that she now argues on appeal. And because she did not give the district court an opportunity to rule on whether extrinsic evidence should be considered "in the first place," she has not preserved the issue for appeal, and we will not reach it. *See id.*

¶23　Finally, the Wilsons assert that under the stipulated judgment, they "are entitled to augment their attorney fees for their efforts to collect on the judgment." To the extent that this is a request for an award of attorney fees incurred on appeal, it is insufficiently supported. "A party seeking attorney fees for work performed on appeal must state the request explicitly and set forth the legal basis for an award." Utah R. App. P. 24(a)(9).

Although the Wilsons cite the judgment's provision regarding "reasonable costs and attorney fees incurred in the subsequent collection of said judgment," they have not established that defending this appeal constitutes "collection of [the] judgment." We therefore decline to augment the judgment with attorney fees incurred on appeal.

CONCLUSION

¶24    The district court correctly determined that Boldt signed the Lease in her individual capacity and is personally liable under the Lease. Accordingly, we affirm.

_____